Glenn **ALLEN**, et al., **Plaintiffs,**

v.

**DIEBOLD, INCORPORATED, Defendant.**

**No. 5:91 CV 2450.**

United States District Court, N.D. Ohio, E.D.

Nov. 24, 1992.

Jeffrey H. Friedman, Friedman, Domiano & Smith, Cleveland, OH, for plaintiffs.

Roger A. Weber, Frederick H. Burton, Taft, Stettinius & Hollister, Cincinnati, OH, Gust Callas, Black, McCuskey, Souers & Arbaugh, J. William Sekula, Diebold, Inc., Canton, OH, for defendant.

## ORDER

SAM H. BELL, District Judge.

### I. INTRODUCTION

Currently before the court are numerous motions, filed by the defendant, for dismissal or for summary judgment. The defendant seeks judgment on both the federal ADEA claims and, as well, the pendent claims advanced in plaintiffs' complaint. While the first dispositive motion was filed early this year, since that time, amended pleadings have necessitated the filing of additional and supplementary briefs and motions. Because all these documents speak to the issues at hand, they are here considered in full, for the purposes of ruling upon the motion entitled "Defendant Diebold, Incorporated's Motion for Summary Judgment on the First Amended Complaint as to Each Plaintiff on all Counts," Docket # 57. All parties to this action have requested and engaged in a similar analysis. (*See* Defendant's Motion at 1 ("Defendant relies on the entire record in the case ..."); Plaintiff's Opposition at 1 ("plaintiffs rely on the entire record in this case....")). Because a large portion of defendant's motion is grounded in the plaintiffs' purported failure to adhere to ADEA's guidelines requiring the filing of administrative claims within 300 days, it is beneficial to recount the uncontested facts surrounding the administrative claims process, the bare facts leading to this suit, and the nature of plaintiffs' complaint.[1]

### II. BACKGROUND

The sixty-two plaintiffs named in the complaint are all former employees of the defendant, Diebold Incorporated. Diebold, employing some 4,000 people world-wide, is widely known for its manufacture of the

---

1. Attached hereto as Appendix A is a summary, drawn from all evidentiary material submitted, of the undisputed dates affecting each plaintiffs' timeliness.

automated teller machine and other products.

Fifty-two of the plaintiffs in the instant action were employed at Diebold's manufacturing plant in Canton, Ohio. All but two of these plaintiffs were members of a local collective bargaining unit (Boilermakers Lodge 1191) and the terms of their employment and layoff procedures were governed by a collective bargaining agreement. The remaining ten plaintiffs were employed at Diebold's manufacturing facility in Hamilton, Ohio. All ten were members of the Safeworkers Union and were subject to a separate collective bargaining agreement.

On October 2, 1989, Diebold formally announced to all Canton employees that it would commence restructuring and relocation operations, resulting in the reduction of employment at the Canton facility by some 300 persons. This restructuring included the establishment of a new automated facility in Lynchburg, Virginia. The Canton plaintiffs' union and the media were informed of the Lynchburg plant's location in November of 1989. (Schissler Aff. at para. 8) In Autumn and early Winter 1989, the Canton workers scheduled for layoff, including plaintiffs, were given notice of their imminent departure pursuant to the Worker Adjustment and Retraining Notification Act ("WARN"). The notice stated that "[t]he termination described below will be permanent." (Diebold's First Motion for Dismissal, Docket # 12, Exhibit 4 at 1) Layoff of the Canton plaintiffs began in January 1990 and continued for some time thereafter. The defendant began hiring new employees for its Lynchburg, Va. facility at the same time. Following their termination, none of the Canton plaintiffs filed a charge with the EEOC within 300 days of the October 2, 1989 announcement or within 300 days of the WARN announcement. (Schissler Aff. at para. 18) In addition, none of the Canton plaintiffs except David Rusu filed an EEOC charge within 300 days of the effective date of his or her layoff. Mr. Rusu voluntarily subjected himself to layoff by resigning his position as steward with rights to super seniority status. (Diebold's First Motion for Dismissal, Docket # 12,

Exhibit 9) The Canton plaintiffs' EEOC charges were dismissed on the merits.

In April of 1990, Diebold informed employees and the Hamilton union that it would be reducing the workforce at its Hamilton facility and was opening a new factory in Sumter, South Carolina. Later that month, the Hamilton union requested "effects" bargaining over the relocation. The union and the company engaged in such bargaining. Diebold began hiring employees in Sumter in July of 1990. Diebold informed the union and Hamilton employees at a meeting on October 2, 1990, confirmed by letter dated October 12, 1990, that Diebold would cease all manufacturing operations at the Hamilton facility by the third of fourth quarter of 1991. The union and the defendant entered into a plant closure agreement on November 19, 1990. That agreement specifically notes that the union was informed of Diebold's decision to close the Hamilton plant on October 2, 1990. All of the Hamilton plaintiffs filed charges with the EEOC well in excess of 300 days after the plant closure notice. (*E.g.*, Diebold's Supplemental Motion to Dismiss, Exhibits 4–10) All EEOC charges filed by the Hamilton plaintiffs were dismissed on the merits.

The initial complaint in this matter was filed by thirty-eight of the plaintiffs on December 4, 1991. By way of amended complaint the original and additional plaintiffs bring five claims. The first count alleges that the defendant, by its lay-off actions, constructively discharged plaintiffs and that it replaced the plaintiffs with younger individuals from South Carolina and Virginia in violation of Section 4(d) of the ADEA, 29 U.S.C. Section 623(d). The second count alleges that the defendant's alleged discrimination in violation of the ADEA was willful or in reckless disregard of the Act. Plaintiffs also bring three pendent claims, to wit: negligent infliction of emotional distress, intentional infliction of emotional distress and violation of Ohio Revised Code Section 4112.99.

## III. STANDARD OF REVIEW

In reviewing a motion for summary judgment, a court must consider the pleadings,

related documents, evidence, and all reasonable inferences in a manner most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Smith v. Hudson*, 600 F.2d 60 (6th Cir.1979). Rule 56 provides, in relevant part, as follows:

(c) ...

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

. . . . .

(e) ...

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Three Supreme Court cases have provided guidance as to the nature of the respective burdens allocated under Rule 56. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The ultimate burden lies with the non-moving party to show the existence of a genuine issue of material fact. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*' Fed.Rule Civ.Proc. 56(e)." *Matsushita*, 475 U.S. at 586–587, 106 S.Ct. at 1356 (emphasis supplied). "In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a show-

ing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The court in *Anderson* held that "the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff had had a full opportunity to conduct discovery." *Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514.

On the other hand, the moving party's burden under Rule 56 is lighter.

Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. But unlike the Court of Appeals, we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim. On the contrary, Rule 56(c) ... suggests the absence of such a requirement.

*Celotex, supra,* at 323, 106 S.Ct. at 2552 (emphasis supplied).

The Sixth Circuit Court of Appeals, in *Street v. J.C. Bradford and Co.*, 886 F.2d 1472 (6th Cir.1989) recently reviewed court decisions and commentary regarding the impact of *Anderson, Celotex*, and *Matsushita* on summary judgment practice. The court concluded that a "new era" in summary judgment practice has opened in the court system as a result of these opinions.

Scholars and courts are in agreement that a "new era" in summary judgments dawned by virtue of the Court's opinions in these cases ... On the whole, these decisions reflect a salutary return to the original purpose of summary judgments. Over the years, decisions requiring denial of summary judgment if there was even

a suggestion of an issue of fact and tended to emasculate summary judgment as an effective procedural device.

*Street, supra,* at 1476.

The court enunciated the following "new era" principles, among others: as on federal directed verdict motions, the "scintilla" rule applies, *i.e.,* the respondent must adduce more than a scintilla of evidence to overcome the motion; the respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment"; the trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact. *Id.* at 1479–1480 (footnotes and citations omitted). With this standard in mind, the court shall evaluate the defendant's motion.

## IV. LAW AND ANALYSIS

The defendant claims that the plaintiffs' action has run afoul of the provisions of Section 626 of the ADEA. That section provides as follows:

No civil action may be commenced by an individual under this section until ... a charge of discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed—

(2) in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred. ...

29 U.S.C. § 626(d). The purpose of this provision is "to protect employers from the burden of defending claims arising from employment decisions that are long past." *Giambrone v. Spalding and Evenflo Co., Inc.,* 966 F.2d 1452 (Table), 1992 WL 129782, 1992 U.S.App. LEXIS 14033 (6th Cir.1992) (quoting *Delaware State College v. Ricks,* 449 U.S. 250, 256–257, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980)). The timely filing requirement "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct.

1127, 1132, 71 L.Ed.2d 234 (1982) (footnote omitted).

The Supreme Court has held that determining the timeliness of an EEOC charge "requires [the court] to identify precisely the 'unlawful employment practice' of which [the plaintiff] complains." *Delaware State College v. Ricks,* 449 U.S. 250, 257, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980). *See also Local 3 Int'l Guards Union of America v. Martin Marietta Energy Systems,* 937 F.2d 608 (Table), 1991 WL 134586, *1, 1991 U.S.App. LEXIS 17424, *2 (6th Cir.1991). If plaintiff's EEOC charge were not filed within 300 days of the date of that occurrence, "any suit under the ADEA filed in the federal district court will be dismissed as untimely" unless the suit is saved by the principles of equitable tolling and the like. *Janikowski v. Bendix Corp.,* 823 F.2d 945, 947 (6th Cir.1987).

As a general rule, "the limitations period in an employment discrimination case begins to run on the date upon which the employee first learns or should have learned of the *adverse employment action.*" *Parrish v. Ford Motor Co.,* 953 F.2d 1384 (Table), 1992 WL 20305, *3, 1992 U.S.App. LEXIS 3361, *7 (6th Cir.1992) (emphasis added). As the Sixth Circuit has repeatedly noted:

A long line of cases, including two Supreme Court cases, hold that a plaintiff's cause of action under the ADEA accrues when he receives notice of termination, not when his employment actually ceases.

*Janikowski v. Bendix Corp.,* 823 F.2d 945, 947 (6th Cir.1987) (citations omitted). *See also Giambrone v. Spalding and Evenflo Co., Inc.,* 966 F.2d 1452 (Table), 1992 WL 129782, *2, 1992 U.S.App. LEXIS 14033, *4 (6th Cir.1992) ("Suffice it to say that the cardinal principle applicable to these proceedings is that a plaintiff's cause of action accrues under the ADEA when he is notified of impending termination, not when employment actually ceases.")

With this established, it is clear that the instant plaintiffs' cause of action accrued at the time they were notified of their impending lay-off. As such, it is clear that

all the Hamilton plaintiffs' actions accrued at the date of the plant closure notice, October 2 or 12, 1990.[2] It is equally clear that the Canton plaintiffs' accrual dates fell on the date of the WARN announcement. As such, there is no genuine issue that the plaintiffs did not file their EEOC charges within three hundred days of these dates. In fact, the plaintiffs concede their filings are untimely. (*See, e.g.,* Plaintiffs' Opposition to Defendant's Motion for Summary Judgment on the First Amended Complaint as to each Plaintiff on all Counts, Docket #81 at 18). The Sixth Circuit has repeatedly "held that compliance with § 626(d) is mandatory." *Martin Marietta,* 1991 WL 134586 at *1, 1991 U.S.App. LEXIS 17424 at *2. Thus, unless plaintiffs' complaint is saved by equitable considerations or by application of the so-called "continuing violation" theory, this suit must "be dismissed as untimely". *Janikowski,* 823 F.2d at 947. Plaintiffs herein argue that their complaint is redeemed by three related principles, *viz.,* waiver, equitable tolling, and the continuing violation theory. While such reasoning requires deliberate consideration, the first of these may be discarded in short order.

■ The first argument raised by plaintiffs is that "at no time were plaintiffs' charges rejected by the EEOC as being untimely and thus, plaintiffs' (sic) reasonably relied on the EEOC's acceptance of their charges." (Plaintiff's Opposition to Defendant Diebold's Initial motion to Dismiss, Docket #21 at 7) As courts of this Circuit have previously held, "the EEOC cannot waive [the employer's] objection to the late filing of [plaintiff's] complaint. The EEOC is not a party to this action and what it may have waived or not waived on its own behalf is not an issue to [the employer.]" *Fryman v. Conagra, Inc.,* 1991 WL 325649, 1991 U.S.Dist. LEXIS 20015, *13 (E.D.Ky.1991); *Graves v. Univ. of Michigan,* 553 F.Supp. 532, 534 (E.D.Mich. 1982) ("[T]he EEOC's decision to process an untimely charge is not binding on this court.") The actions (or inaction) of the

administrative body charged with enforcement of the statute may not modify Congress' clear intent, mandated by that statute, "that a complainant must file timely administrative charges in order to preserve a federal claim for age discrimination." *Id.* The EEOC has not and cannot waive the *employer's* statutory prerogative to object to the untimely nature of the administrative charges. The first substantive argument advanced by plaintiffs is that the limitations period applicable here be equitably tolled. In our analysis, the court shall look to the operation of this doctrine under both Title VII and ADEA cases, two similar Acts where its application is commonly sought. *Morgan v. Washington Mfg. Co.,* 660 F.2d 710, 712 (6th Cir.1981).

■ The doctrine of equitable tolling is appropriate in "limited circumstances". *Brown v. Mead Corp.,* 646 F.2d 1163, 1165 (6th Cir.1981). Because its application is "usually very much restricted," equitable tolling "is to be carefully applied." *Wilson v. Grumman Ohio Corp.,* 815 F.2d 26, 28 (6th Cir.1987); *Andrews v. Orr,* 851 F.2d 146, 151 (6th Cir.1988) Because this doctrine's application is fact-specific and is applied to remedy a variety of inequitable circumstances, *e.g. Brown v. Crowe,* 963 F.2d 895 (6th Cir.1992), courts have used this term in an imprecise manner.

In a typically erudite opinion on this and related statutes of limitation matters, Judge Posner has provided us with a succinct description of the context in which equitable tolling arises:

[I]t [equitable tolling] does not assume a wrongful—if any—effort by the defendant to prevent the plaintiff from suing. ... [T]he plaintiff is assumed to know that he has been injured [by his termination notice], so that the statute of limitations has begun to run; but he cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant.

---

**2.** Although choosing an October 2, 1990 accrual date seems more appropriate in light of the plant closure agreement's language, it is irrelevant which date actually constitutes the notice

of which we speak because, in any event, these plaintiffs knew of the plant closure by October 12 and did not file their charges with the EEOC within three-hundred days of that date.

*Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir.1990) (Posner, J.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991). This circumstance, Judge Posner posits, should be distinguished from those invoking the discovery rule and equitable estoppel, although courts frequently apply these concepts under the rubric of "equitable tolling". *See e.g., Jones v. Gen'l Motors Corp.*, 939 F.2d 380, 385 (6th Cir.1991)[3] The former, the discovery rule, "postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured." *Id.* at 450. By way of example, a plaintiff's cause of action for discriminatory termination accrues not when his superiors decide to terminate him, but when they communicate that decision to him. *Id.* The latter doctrine of equitable estoppel, also called fraudulent concealment, is applicable to non-limitations settings and is frequently mislabelled "equitable tolling". This principle arises when "the defendant takes active steps ... *above and beyond the wrongdoing upon which plaintiff's claim is founded* to prevent the plaintiff from suing in time." *Cada v. Baxter Healthcare Corp.*, 920 F.2d at 450–451 (emphasis added). *See also Pinney Dock and Transport Co. v. Penn Central Corp.*, 838 F.2d 1445, 1471–72 (6th Cir.1988), *cert. denied,* 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988) (anti-trust case wherein the Circuit held that when the underlying cause of action is not one of fraud, "[m]ere silence, or one's unwillingness to divulge one's allegedly wrongful activities is not sufficient ... [to give rise to equitable estoppel]. [A] plaintiff should be required to prove affirmative acts of concealment, particularly in light of the strong policy in favor of statutes of limitations.") For example, the accrual of a plaintiff's cause of action would be postponed if the employer had told the plaintiff it would not plead a limitations defense or had presented plaintiff with forged documents "purporting to negate

any basis for supposing that [plaintiff's] termination was related to age" *Cada*, 920 F.2d at 451. As Judge Posner notes, these actions should not be confused with the decision to terminate a plaintiff, regardless of whether the reason offered for the termination is a pretext for discrimination. Thus:

> [A plaintiff] [cannot] tr[y] to bring himself within the doctrine by contending that the reorganization of [the employer's business] was a ruse to conceal the plan to fire him for his age. This merges the substantive wrong with the tolling doctrine, ignoring our earlier distinction between two types of fraud. It implies that a defendant is guilty of fraudulent concealment unless it tells the plaintiff, "We're firing you because of your age." It would eliminate the statute of limitations in age discrimination cases.

*Cada v. Baxter Healthcare Corp.*, 920 F.2d at 451.

In the case at bar, the plaintiffs are apparently attempting to rely upon both the equitable estoppel and equitable tolling doctrines. Reliance upon the former, if plaintiffs do indeed advance that argument, is clearly misplaced. In their opposition to the defendant's most recent motion, plaintiffs state:

> Since Diebold made no effort to disclose the following facts to plaintiffs: (1) that it would receive financial assistance from the Commonwealth of Virginia and the State of South Carolina in consideration for employing individuals through the respective employment commissions of each state; (2) that it hired 126 employees for the two new facilities, and only 20 of such employees were over the age 40; and (3) that the new facilities were "non-union shops" and workers were paid "sun-belt wages", between $7.00 to $8.00 pre (sic) hour salary. Diebold, in all of its communications with its Canton employees, Hamilton employees, Boiler-

---

**3.** *See also Stark v. Dynascan Corp.*, 902 F.2d 549, 551 (7th Cir.1990) In that case, the Seventh Circuit fused the concepts of equitable estoppel and equitable tolling stating: "to invoke equitable tolling, the plaintiff must therefore show that the defendant attempted to mislead him."

As noted by Judge Posner, "[t]he fusion of the two doctrines ... was inadvertent ... because it would have been overruling [prior Seventh Circuit precedent]—not to mention the Supreme Court." *Cada v. Baxter Healthcare Corp.*, 920 F.2d at 452.

makers Lodge 1191 and Safeworkers Union concerning the restructuring, *never* mentioned these factors and instead, opted to conceal these facts to plaintiffs. The concealment and nondisclosure of these facts, which plaintiffs could not have discovered themselves in the exercise of reasonable diligence, justify tolling the 300 day limitations period.

(Plaintiffs' Brief in Opposition to the Defendant's Final Motion, Docket # 81 at 21) These same points are advanced by plaintiffs to rebut the defendant's articulated business reason for the layoffs forming the foundation of this suit. (*See, e.g.,* Docket # 81 at 32–39) Here, then, the plaintiffs do not allege or offer proof that the defendant took active steps *above and beyond the wrongdoing upon which plaintiff's claim is founded* to prevent the plaintiff from suing in time. Rather, they claim that the defendant's failure to apprise them of the full extent of its alleged wrongdoing prevented them from bringing their claims in a timely manner. Such facts do not give rise to equitable estoppel. As noted by Judge Posner, such an argument:

> implies that a defendant is guilty of fraudulent concealment unless it tells the plaintiff, "We're firing you because of your age." It would eliminate the statute of limitations in age discrimination cases.

*Cada v. Baxter Healthcare Corp.,* 920 F.2d at 451. Diebold is not equitably estopped from advancing its Section 626(d)(2) defense.

■ The second equitable doctrine advanced is that of equitable tolling. This principle may be invoked "if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Cada,* 920 F.2d at 451. Plaintiffs' argument for application of this doctrine is as follows:

> As in *Cocke,*[4] the fact that the plaintiffs were laid-off did not, in their minds, create more than a mere "suspicion" that they were being laid-off because of their age. It was not until nearly two years *after* defendant's October 2, 1989 plan to restructure and reduce forces that plaintiffs' suspicions of age discrimination turned into a fact upon which they could act. This critical turning point occurred when Sam Morris and Al Conners, employees of defendant who worked as temporary consultants at defendant's new Lynchburg, Virginia facility and were responsible for training new employees, advised several plaintiffs, including Jack Ulrich, in November 1990, that defendants hired younger, less paid individuals instead of plaintiffs. Thereafter, Jack Ulrich held a meeting, which plaintiffs attended, and advised them that defendant hired younger, less paid employees to work at its new plant. Thus, the alleged unlawful age discrimination did not occur on October 2, 1989 or October 2, 1990, as defendant asserts, but in November of 1990, when plaintiff learned of defendant's hiring of younger employees in lieu of recalling plaintiffs.

(Plaintiffs' Brief in Opposition to Defendant's Final Motion at 6–7). The plaintiffs' argument can thus be divided into two-interrelated parts. First, although the plaintiffs were "suspicious" that they were terminated due to their age, they were contractually entitled to recall and did not learn that plaintiff had hired younger "replacement" workers until November 1990. These asserted facts, plaintiffs claim, should postpone accrual of their cause of action until the November 1990 date.

A belief that one may be recalled combined with a contractual right to recall is not grounds for equitable tolling. *Lawson v. Burlington Industries, Inc.,* 683 F.2d 862, 864 (4th Cir.1982), *cert. denied,* 459 U.S. 944, 103 S.Ct. 257, 74 L.Ed.2d 201 (1982). This is the true when the employer did not "mislead or misrepresent [plaintiff's] prospects for future employment." *Id.* The plaintiffs in the instant case have not directed this court to any evidence that Diebold held out the prospect of recall; in point of fact, the evidence before this court indicates the contrary. Both logic and the terms of the collective bargaining agreements at issue indicate that recall would be had to facilities in Canton and Hamilton

---

**4.** *Cocke v. Merrill Lynch & Co., Inc.,* 817 F.2d 1559 (11th Cir.1987).

respectively, not recall to plants in other locations. (Schissler Aff., Docket #25 at para. 7, 8; Plaintiffs' Brief in Opposition to Defendant's Final Motion, Docket #21 at Exhibits 1, 2) Diebold could not unilaterally transfer the plaintiffs to a new facility because such transfer in a case such as this could very well be the subject of mandatory bargaining. *Dubuque Packing Company, Inc.,* 1991 N.L.R.B. LEXIS 750, 1991 WL 146795 (1991); *Connecticut Color, Inc.,* 288 NLRB 699 (1988) The Canton plaintiffs' union never requested bargaining over transfer rights or recall rights to the Lynchburg facility or elsewhere. (Schissler Aff. at para. 7) In contrast, the Hamilton plaintiffs' union did request that these plaintiffs be allowed to transfer to the Sumter, South Carolina facility under the terms of the extant Hamilton CBA. Diebold did not agree to this proposal[5], which was ultimately dropped by the union. (Schissler Aff. at para. 8) Thus, it is clear that the plaintiffs' recall rights, standing alone, is of small consequence in our considerations.

Here, however, we are concerned with the question of whether plaintiffs' unrealistic expectation of recall combined with their "discovery" of Diebold's hiring younger workers gives cause to equitably toll the deadline for filing their EEOC charges. This being so, we are called upon to determine whether plaintiffs, "despite all due diligence, were unable to obtain vital information bearing on the existence of [their] claim." Or, put another way, we must determine when the "facts that would support a charge of discrimination ... were apparent or should have been apparent to a person with a reasonably prudent regard for his rights ..." *Reeb v. Economic Opportunity Atlanta, Inc.,* 516 F.2d 924, 931

(5th Cir.1975); *See also Fox v. Eaton Corp.,* 689 F.2d 91, 93 (6th Cir.1982) (per curiam)[6] This court is somewhat skeptical of an argument that plaintiffs could not, *in the exercise of reasonable diligence,* have discovered Diebold's activities.

To recapitulate, plaintiffs seek to invoke equitable tolling on the basis of the following facts:

> Contrary to defendant's assertion, the 300–day period began to run in or about November 1990 when plaintiff's (sic) learned that defendant, instead of recalling the plaintiffs, who had 5 year recall rights, hired younger, less paid employees to work in its Lynchburg, Virginia facility. At this time, defendant's actions supported a charge of age discrimination, which was apparent to plaintiffs. Thereafter, plaintiffs commenced filing charges of age discrimination with the EEOC. At the time of filing their respective EEOC charges, plaintiffs had not retained counsel and were not advised by the EEOC that their respective age discrimination charges were untimely. Therefore, the within facts justify equitable tolling of the 300–day filing period and Plaintiffs' Federal Counts One and Two should not be dismissed.

(Plaintiffs' Opposition to Defendant Diebold, Inc.'s Motion to Dismiss and/or for Summary Judgment, Docket #21 at viii) This court's difficulty with the plaintiffs' argument is grounded in two related concerns. First, in order to invoke equitable tolling principles, we must conclude that the facts necessary to support a charge of discrimination were not apparent to a person with a reasonable regard for his rights in the exercise of due diligence. *Reeb,* 516 F.2d at 931. Here, according to plaintiffs'

---

**5.** Of course, an employer's duty to bargain does not include the obligation to agree to a union proposal. *H.K. Porter v. N.L.R.B.,* 397 U.S. 99, 90 S.Ct. 821, 25 L.Ed.2d 146 (1970).

**6.** The plaintiffs faithful reliance upon the broadest possible interpretation of the language in *Reeb* is likely misplaced. Since its decision in *Reeb,* the Fifth Circuit has confronted a Title VII plaintiff's argument that:

> in determining whether a particular claim is time-barred, a court should focus on the date

the victim first perceives that a discriminatory motive caused the act, rather than the date of the act itself.

*Merrill v. Southern Methodist Univ.,* 806 F.2d 600, 605 (5th Cir.1986) The Circuit rejected that argument because "[i]t might be years before a person apprehends that unpleasant events in the past were caused by illegal discrimination. In the meantime, under [plaintiff's] theory, the employer would remain vulnerable to suits based on these old acts. [Plaintiff's] proposal is inconsistent with the Supreme Court's language...." *Id.*

counsel, plaintiffs were immediately suspicious that age discrimination was a factor in their lay-off. (Plaintiffs' Brief in Opposition to Defendant's Final Motion at 6–7). Rather than acting upon that suspicion, plaintiffs sat on their rights. Plaintiffs then learned, fortuitously and not as a result of their own efforts, that defendant had hired younger workers in its Southern facilities; but even then, plaintiffs waited several more months to file their EEOC charges. Plaintiffs have offered no facts, apart from the remoteness of the Southern facilities, to explain why they did not earlier discover the defendant's employment practices at some earlier time. This court is inclined to believe that such facts should be forthcoming in order to satisfy the due diligence requirement of equitable tolling. *See Wall v. National Broadcasting Co., Inc.,* 768 F.Supp. 470, 476 (S.D.N.Y.1991) (summary judgment appropriate when plaintiff has "failed to set forth evidence demonstrating that he could not have discovered the alleged discriminatory act at an earlier date in the exercise of reasonable diligence.")

The second difficulty with plaintiffs' position lies in the substantive portion of the equitable tolling inquiry. Here, we must remember that we must determine whether plaintiffs were apprised of the facts necessary to support *an EEOC charge.* As noted by Judge Posner, "we are speaking not of a judicial complaint, but of an administrative complaint. There is *no duty of precomplaint inquiry in EEOC proceedings as distinct from federal court actions." Cada,* 920 F.2d at 452 (emphasis added) Plaintiffs have not offered any reason why they did not act upon what their counsel characterizes as their "suspicion" that they were terminated on the basis of their age. Rather, they complain that they had no factual support for that suspicion until they learned that Diebold had hired younger, less well-paid workers in the South. As plaintiffs' counsel notes "[a]t this time, defendant's actions supported a charge of age discrimination." (Docket # 21 at viii) In a reduction in workforce cases, however, replacement by younger workers is not an essential element of a prima facie case. As this court has previously stated, "it is immediately apparent that one of the prima facie elements commonly considered in discrimination cases, that which asks whether the plaintiff was replaced, is not scrutinized in ordinary fashion. The issue of whether the employee was replaced is initially considered in order to determine whether the case involves a workforce reduction situation." *Haydu v. Physics Int'l Co.,* No 91–CV 225, slip op. at 13 (N.D.Ohio November 4, 1991) (order granting defendant's summary judgment motion). An employee is not "replaced", but rather a workforce reduction occurs, when "another employee is assigned to perform the plaintiff's duties in addition to other duties" *Barnes v. Gencorp Inc.,* 896 F.2d 1457, 1465 (6th Cir. 1990), *cert. denied,* 498 U.S. 878, 111 S.Ct. 211, 112 L.Ed.2d 171 (1990). It seems rather clear that such is the case here. (*See* Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment on the First Amended Complaint as to Each Plaintiff on All Counts, Docket # 81 at 8) ("Diebold has selected approximately 74 persons to work at its Lynchburg ... Due to the opening of the Lynchburg Plant, approximately 240–250 employees, including 52 of the plaintiffs were laid off at the Canton Plaint.") In such a circumstance, the prima facie test for workforce reduction cases requires plaintiffs to show: (1) that they were age forty or over; (2) that they were qualified to perform the job; (3) that they were discharged; and (4) that there exists "direct, circumstantial or statistical evidence tending to indicate that the employer singled out the plaintiff[s] for impermissible reasons." *Barnes,* 896 F.2d at 1465. In light of this controlling law, the justification for plaintiffs delay, their discovery that Diebold had hired younger workers, is, at first blush, irrelevant to filing an EEOC charge of age discrimination. This is especially true in light of the fact that the filing of such a charge is an admittedly unobstructed affair. Moreover, there is authority, albeit not-controlling, for the proposition that the ADEA filing limit may not be tolled until the plaintiff discovered the hiring of a younger replacement when the employer had not used the timing

delay in hiring a replacement as a means to delay plaintiff's filing. *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1050–1051 (4th Cir.1987), *cert. denied*, 486 U.S. 1044, 108 S.Ct. 2037, 100 L.Ed.2d 621 (1988). On the basis of this analysis, this court should not hesitate to conclude that plaintiffs have not exercised due diligence. Nevertheless, *such a decision would not conclude our inquiry.*

The defendant asserts that even if the plaintiffs are entitled to the benefit of equitable tolling, their EEOC charges are, nevertheless, untimely. This court agrees. If plaintiffs are entitled to equitable tolling, they must bring their complaint within a reasonable time after their "discovery" that defendant had hired younger workers. As Judge Posner and the Seventh Circuit stated in *Cada:*

> [w]e hold that a plaintiff who invokes equitable tolling to suspend the statute of limitations must bring suit within a reasonable time after he has obtained, or by due diligence could have obtained, the necessary information.

*Cada*, 920 F.2d at 453.[7] In the case at bar, plaintiffs filed their charges in a period ranging from June of 1991 to the start of 1992 or, in other words, eight months to over a year after they learned that the defendant had hired younger workers for its Southern facilities. (*See, e.g.,* Defendant Diebold Incorporated's Supplemental Motion to Dismiss and/or for Summary Judgment, Docket # 29, at Exhibits 1–10) The plaintiffs justify their delay in the following manner:

> In the late fall of 1990, Plaintiff Jack Ulrich learned through Diebold employees, Samuel Morris and Alan Conners, that Diebold hired a younger, cheaper workforce at its new plants and the workforce's salary was subsidized, in part, by the respective employment commissions of the states. Upon learning this information, Plaintiff Ulrich, in or about February of 1991, met with a rep-

resentative of the EEOC, in addition to about 25 other laid-off Diebold employees, at Frank's Restaurant. At this meeting, Jack Ulrich was advised that individuals over the age of 40 are in the class protected under the ADEA.

In the months following that meeting, Plaintiff Ulrich was uncertain as to what course of action he should take, so he spent time consulting with several other employees, who are all plaintiffs herein, until they decided to file an EEOC charge on June 25, 1991.

After filing his EEOC charge, Plaintiff Ulrich spoke with many other former Diebold employees, who were laid-off, and interested in pursuing an action under the ADEA. Approximately 78 former employees appeared at Frank's restaurant on July 2, 1991 where the ADEA and the fact that older employees become an expensive commodity to companies were discussed. Thereafter, plaintiffs began filing charges of age discrimination with the EEOC.

During 1991, Plaintiff Glenn Allen spoke with Plaintiff Jack Ulrich about the layoffs at the Canton plant. Both plaintiffs compared the situations at the respective plants, assessing that approximately 78% of the workforce at each facility was over the age of 40 and was impacted adversely by the alleged restructuring. In speaking with Plaintiff Jack Ulrich, Plaintiff Allen learned of the ADEA and decided to attend the July 2, 1991 meeting at Frank's Restaurant, along with four other Hamilton employees.

(Plaintiffs' Opposition to Defendant's Motion for Summary Judgment on the First Amended Complaint as to Each Plaintiff on All Counts, Docket # 81 at 12–13) (evidentiary citations omitted) These facts, even if accepted as true, do not exhibit diligence in pursuing one's rights within a reasonable time. A party seeking the benefit of equitable tolling based upon his or her de-

---

7. In contrast, the discovery rule postpones accrual of the cause of action until the date of discovery. Similarly, equitable estoppel entitles a plaintiff to "the full amount of time allowed by Congress for the commencement of his action, undiminished by any period of time in which it might appear that he was unlawfully induced to forego commencing his action by the unfair and inequitable conduct of [defendant]." *Ott v. Midland–Ross Corp.*, 600 F.2d 24, 33 (6th Cir.1979).

layed discovery of facts supporting a charge of discrimination, should, and if the facts do indeed support a charge, likely would promptly act upon those facts by filing a charge with the EEOC. In the case at bar, however, the plaintiffs engaged in discussions and debates over a period of nine months to a year following their discovery of Diebold's Lynchburg and Sumter hiring practices. As noted by our Circuit, a court should not:

> permit an aggrieved employee aware of his general rights to sit on those rights until he leisurely decided to take action. This would be inconsistent with and undermine the underlying policy of encouraging speedy, non-judicial resolution of age discrimination employment disputes.

*Jackson v. Richards Medical Co.*, 961 F.2d 575, 580 (6th Cir.1992) (quoting *McClinton v. Alabama By-Products Corp.*, 743 F.2d 1483, 1486 (11th Cir.1984)). *See also English v. Pabst Brewing Co.*, 828 F.2d 1047, 1051 (4th Cir.1987) ("[I]f [the replacement's] employment had the critical significance [plaintiff] attributes to it, we are unable to understand why he waited nearly six months more before filing a charge. ... We cannot perceive in this set of circumstances any reason to ... afford plaintiff the extraordinary relief that he requests.") As noted by Judge Posner:

> [equitable tolling] is, after all, an equitable doctrine. It gives the plaintiff extra time if he needs it. If he doesn't need it there is no basis for depriving the defendant of the protection of the statute of limitations. Statute of limitations are not arbitrary obstacles to the vindication of just claims, and therefore they should not be given a grudging application. They protect important social interests in certainty, accuracy and repose. The statute of limitations is short in age discrimination cases as in most employment cases because delay in bringing of suit runs up the employer's potential liability; every day is one more day of backpay entitlements. We should not trivialize the statute of limitations by promiscuous application of tolling doctrines. When we are speaking not of equitable estoppel but of equitable tolling, we are (to repeat) dealing with two innocent parties

and in these circumstances the negligence of the party invoking the doctrine can tip the balance against its application—as it did, for example, in the *Irwin* [*v. Veterans Administration*, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435] [(1990)] case cited earlier.

*Cada*, 920 F.2d at 451–452. In the case at bar, the plaintiffs, after acquiring the information purportedly necessary for them to lodge an EEOC complaint, displayed a remarkable degree of lethargy in pursuing claims which should, by the righteous indignation such claims oft-times evoke, cry out for immediate protest. Even were the delayed discovery of the facts allegedly necessary to support a claim sufficient to invoke the doctrine of equitable tolling, the plaintiffs' nine-month to year-long delay in filing their charges after that discovery is not, it is believed, as a matter of law, reasonable. Accordingly, even though plaintiffs were entitled to equitable tolling their EEOC charges are, nevertheless, untimely and therefore do not bar the defendant's statute of limitations defense.

■ Plaintiffs make their final argument concerning the timely filing requirement by way of their allegation that they have been victimized by the defendant's continuing violation of the ADEA. This notion was first raised in their response to the defendant's initial motion to dismiss. There, they stated:

> In the instant case, the unlawful employment practice of which the plaintiffs complaint consisted of actions by defendant that occurred over a two year period. The practice began when defendant announced its plans to reduce forces on October 2, 1989; its layoff of 35 Canton, Ohio employees, who were over the age of 40; its decision to cease operations at its Hamilton, Ohio facility and its layoff of Plaintiffs Allen, Collett and Federle, all of whom were over age 40; its failure to exercise the recall rights of plaintiffs and its hiring of younger, less paid employees to work at its new Lynchburg, Virginia facility in November 1990. These events, which when viewed collectively give rise to a discriminatory practice that endured for several years, are

not isolated, are reasonably related and thus constitute a continuing violation of the Age Discrimination in Employment Act.

(Plaintiffs' Opposition to Defendant Diebold Inc's Motion to Dismiss and/or for Summary Judgment, Docket # 21 at 14–15) (citations omitted). These contentions merit further discussion. *See Delaware State College v. Ricks,* 449 U.S. 250, 257, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980) (dismissal for untimeliness appropriate, despite continuing violation. theory advanced by a plaintiff, when the complaint does not allege the same facts profferred by the plaintiff in support of the continuing violation theory.) Restated, the complaint alleges the same core of facts, save the failure to recall allegations, that are here advanced by plaintiffs to support application of the continuing violation theory. Thus, we must determine whether these allegations, grounded essentially in undisputed fact, are sufficient as a matter of law to support application of the continuing violation theory. *See, e.g., Dixon v. Anderson,* 928 F.2d 212, 216 (6th Cir.1991). The defendant claims they are not. This court agrees.

As a preface to our discussion, it must be noted that the contours of the law concerning the continuing violations doctrine "are at best unclear." *Dixon v. Anderson,* 928 F.2d 212, 219 (6th Cir.1991) (Jones, J., dissenting). It is a concept which apparently has grown with each court and litigant's repetition of its vaguely defined edges. Indeed, the Circuit courts are apparently divided over the very function of this doctrine. More than one court has held that "[a] continuing violation ... does not excuse an aggrieved employee from complying with the applicable statute of limitations. Rather, it simply allows an employee to include in his initial complaint ... allegedly discriminatory acts that occurred before the limitations period, provided that at least one of the acts complained of falls within the limitations period." *Scott v. St. Paul Postal Service,* 720 F.2d 524, 525 (8th Cir.1984), *cert. denied,* 465 U.S. 1083, 104 S.Ct. 1453, 79 L.Ed.2d 770 (1984). *See also Shehadeh v. Chesapeake & Potomac Tel. Co.,* 595 F.2d 711 (D.C.Cir.1978). No specific point of view on this particular issue

has been the subject of opinion in this circuit.

But our appellate court has instructed us that we must view continuous violations "as falling into two categories of 'narrowly limited exceptions' to the usual rule that 'statutes of limitations ... are triggered at the time the alleged discriminatory act occurred.'" *Haithcock v. Frank,* 958 F.2d 671, 677–78 (6th Cir.1992) (quoting *Dixon v. Anderson,* 928 F.2d 212, 216 (6th Cir. 1991); *E.E.O.C. v. Penton Industrial Pub. Co.,* 851 F.2d 835, 837–38 (6th Cir.1988)) Apparently, then, a properly alleged continuous violation would excuse an untimely filing. The court shall address these categories *seriatim.*

The first category of continuous violations is succinctly summarized in the Sixth Circuit's *Dixon* opinion:

> The first category arises where there is some evidence of *present* discriminatory activity giving rise to a claim of continuing violation; that is, where an employer continues presently to impose disparate work assignments or pay rates between similarly situated employee groups. The rationale underlying this category is that the employer commits an illegal act, such as giving unequal pay for equal work, *each time* the employer dispenses unequal pay. This result follows from the fact that paying unequal wages for equal work is *in itself* the forbidden discriminatory act. It is irrelevant that the employer has committed the same illegal act at other times prior to the beginning of the relevant limitations period. Of course, this category requires a "current" as well as a "continuing" violation: at least one of the forbidden discriminatory acts must have occurred within the relevant limitations period. Thus, limitations periods begin to run in response to discriminatory *acts* themselves, not in response to the continuing *effects* of past discriminatory acts.

*Dixon v. Anderson,* 928 F.2d at 216 (citations omitted) (emphasis in original)

As this passage makes clear, the first category of continuous violations requires repetitive discriminatory acts, at least one

of which must fall within 300 days prior to the date of plaintiffs' EEOC charges. Furthermore, there is authority which unquestionably suggests that these series of discriminatory acts, including the one occurring within the limitations period, must beset each plaintiff individually. *Local 3 Int'l Guards Union of America v. Martin–Marietta Energy Systems, Inc.*, 937 F.2d 608 (Table), 1991 WL 134586, *5, 1991 U.S.App. LEXIS 17424, *4 (6th Cir.1991); *Dixon v. Anderson*, 928 F.2d at 217; *Conlin v. Blanchard*, 890 F.2d 811, 815 (6th Cir.1989) In both the plaintiffs' complaint and their briefs in opposition to the instant motion, it is clear that they complain of discriminatory discharge alone.

The substantive portions of plaintiffs' amended complaint makes the following allegations:

### Count One

13. Throughout their employment with defendant, plaintiff never received substantial reprimands or warnings necessitating discharge.

14. In January 1990, defendant began constructively discharging, by laying off and permanently laying off, its laborers who were over the age of forty.

15. In October 1989, defendant announced its decision to close the plant located in Canton, Ohio, and transfer some of its operations and laborers to South Carolina and Virginia, where unions are nearly non-existent and labor is less costly.

16. Defendant never closed its Canton, Ohio facility and, in fact, its Canton, Ohio facility is still in operation at present.

17. From January 1990 through September 1991, defendant continued its policy and practice of constructively discharging, by laying off and permanently laying off, its laborers who were over the age of forty.

18. At the time plaintiffs were constructively discharged from their employment with defendant, plaintiffs were more than forty years old.

19. The individuals in South Carolina and Virginia hired by defendant to replace plaintiffs were much younger than plaintiffs.

20. The individuals in South Carolina and Virginia hired by defendant to replace plaintiffs received substantially less pay than plaintiffs.

21. The pay for the individuals in South Carolina and Virginia hired by defendant to replace plaintiffs was subsidized by the unemployment agencies of those States.

22. Plaintiffs were denied employment opportunities because of plaintiffs' age, in violation of Section 4(d) of the ADEA, 29 U.S.C. Section 623(d).

### Count Two

28. Defendant voluntarily and intentionally and willfully discriminated against plaintiffs *in discharging plaintiffs from their employment with defendant....*

(First Amended Complaint, Docket # 24, at 10–12) (emphasis added) The facts plaintiffs allege in support of the continuing violation theory are all tied to but one discriminatory event, their discharge. (*See* this opinion at page 1319) In order for the first category of continuing violation to apply, the plaintiff must allege repeated *illegal* discriminatory acts. In the instant case, however, plaintiffs allege that Diebold engaged in a series of acts which tend to prove *one* illegal act, discharge for old age. As noted by our Circuit, "[i]f subsequent *identifiable acts of discrimination* occurred within the critical time period and were related to the time-barred incident, the bar does not apply." *Hull v. Cuyahoga Valley Bd. of Educ.*, 926 F.2d 505, 511 (6th Cir.1991) (emphasis added), *cert. denied sub nom. Hull v. Schuck*, — U.S. ——, 111 S.Ct. 2917, 115 L.Ed.2d 1080 (1991). *See also E.E.O.C. v. Penton Indus. Pub. Co. Inc.*, 851 F.2d 835, 838 (6th Cir.1988) (listing cases so holding) In the case at bar, plaintiff argues that the continuing violation:

> began when defendant announced its plans to reduce forces on October 2, 1989; its layoff of 35 Canton, Ohio employees, who were over the age of 40; its

decision to cease operations at its Hamilton, Ohio facility and its layoff of Plaintiffs Allen, Collett and Federle, all of whom were over age 40; its failure to exercise the recall rights of plaintiffs and its hiring of younger, less paid employees to work at its new Lynchburg, Virginia facility in November 1990.

(Plaintiffs' Opposition to Defendant Diebold Inc's Motion to Dismiss and/or for Summary Judgment, Docket # 21 at 14–15) (citations omitted). Even if one ignores problems of proof, the simple fact remains that none of these events, standing alone and apart from the discharge, constitute an illegal discriminatory act. The lay-off announcement and the lay-off constitute one discriminatory act. The hiring of young workers, clearly not itself a discriminatory act, tends to prove the discriminatory act of age-based discharge. Finally, the remaining fact of failure to recall plaintiffs (which is nowhere mentioned in plaintiffs' complaint) is not a discriminatory act, but a discriminatory effect. *See Dixon v. Anderson*, 928 F.2d at 216. The discriminatory act occurred upon plaintiffs' discharge. *See Smith v. Kaldor*, 869 F.2d 999, 1007–1008 (6th Cir.1989):

> Some acts of discrimination, as in *Held [v. Gulf Oil Co.*, 684 F.2d 427] [ (6th Cir.1982) ], or "maintenance of a discriminatory, hiring, placement, or promotion system", have been recognized as "continuing violations". Courts have consistently held that the discharge of an employee is a "discreet act of discrimination that does not rise to the level of a continuing violation."

(citations omitted). The Supreme Court has repeatedly held that "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Chardon v. Fernandez*, 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981) (quoting *Delaware State College v. Ricks*, 449 U.S. at 257, 101 S.Ct. at 504) Similarly, the mere continuity of unemployment due to lay-off likewise does not extend a plaintiff's cause of action because that would lead to the ridiculous result that "no termination complaint could ever be time-barred if a subsequent discriminatory failure to rehire is alleged."

*Yokum v. St. Johnsbury Trucking Co., Inc.*, 595 F.Supp. 1532, 1534 (D.Conn.1984) *See also Burnam v. Amoco Container Co.*, 755 F.2d 893, 894 (11th Cir.1985) ("a potential plaintiff could always circumvent the limitations"). As succinctly concluded by the Fourth Circuit:

> It is well established that a layoff from employment constitutes a completed act at the time it occurred, and that an employer's failure to recall or rehire does not constitute a continuing violation of the ADEA.

*Lawson v. Burlington Industries, Inc.*, 683 F.2d at 865. *See also Jones v. Peabody Coal Co.*, 1989 WL 225719, *4, 1989 U.S.Dist. LEXIS 17131, *10 (W.D.Ky.1989) (so holding). Thus, at least as far as this first category of continuing violations is concerned, the limitations period began when plaintiff's learned of their impending layoff because there were no later triggering events.

The second category of continuous violations arises:

> where there has occurred "a longstanding and demonstrable policy of discrimination". Unrelated incidents of discrimination will not suffice to invoke this exception; rather, there must be a continuing "over-arching policy of discrimination." Generally, "[r]epeated requests for further relief from a prior act of discrimination will not set the time limitations running anew." However, where there has been a long-standing policy of discrimination, *repeated* attempts to gain employment or promotions may *each* trigger the running of a new limitations period.

> .    .    .    .    .

> [T]here must be a specific allegedly discriminatory act against the plaintiff within the relevant limitations period measured back from the time of the complaint.

*Dixon v. Anderson*, 928 F.2d 212, 217 (6th Cir.1991)

As a preface, this court must note that plaintiffs have proffered no alleged discriminatory acts directed against them within the 300 days prior to their EEOC

charges. Apart from this, however, the facts alleged in their complaint and here offered on summary judgment do not, as a matter of law, fall within the second category of continuous violations. In this category, we must remember that we must be apprised of facts tending to show a "continuing 'over-arching policy of discrimination.'" *Dixon v. Anderson*, 928 F.2d at 217 (quoting *Janikowski v. Bendix Corp.*, 823 F.2d at 948 (6th Cir.1987)) In the case at bar, plaintiffs offer the following facts to prove this "longstanding and demonstrable policy of discrimination" [8]:

> In the instant case, the unlawful employment practice of which the plaintiffs complaint consisted of actions by defendant that occurred over a two year period. The practice began when defendant announced its plans to reduce forces on October 2, 1989; its layoff of 35 Canton, Ohio employees, who were over the age of 40; its decision to cease operations at its Hamilton, Ohio facility and its layoff of Plaintiffs Allen, Collett and Federle, all of whom were over age 40; its failure to exercise the recall rights of plaintiffs and its hiring of younger, less paid employees to work at its new Lynchburg, Virginia facility in November 1990. These events, which when viewed collectively give rise to a discriminatory practice that endured for several years, are not isolated, are reasonably related and thus constitute a continuing violation of the Age Discrimination in Employment Act.

(Plaintiffs' Opposition to Defendant Diebold Inc's Motion to Dismiss and/or for Summary Judgment, Docket # 21 at 14–15) (citations omitted). It has been repeatedly stated that "[s]imply labelling the [adverse employment actions] parts of a "continuing violation" is not enough to make them such. Although the application of a continuing policy against an employee over time constitutes continuing conduct, the distinct events [embodied in the adverse employment actions] do not by themselves indicate a continuing policy." *Hawley v. Dresser Industries, Inc.*, 737 F.Supp. 445, 453 (S.D.Ohio 1990) (Kinneary, J.,), *aff'd in part and rev'd in part (on other*

grounds)*, 958 F.2d 720 (6th Cir.1992). In other words, "[i]n order to show that the defendant's actions were part of a discriminatory system, plaintiff must produce admissible evidence which shows that … age discrimination was [defendant's] standard operating procedure—the regular rather than the unusual practice." *Wingfield v. United Technologies Corp.*, 678 F.Supp. 973, 979 (D.Conn.1988) In the case at bar, however, the plaintiffs have done no more than recast the defendant's decision to close two facilities into a purported decision to individually terminate 62 plaintiffs for old age, thus evincing a "policy" of discrimination. This court believes such an assertion is untenable in light of this Circuit's precedent. Diebold's decision to close the Hamilton facility and to relocate a portion of the Canton facility's functions was, at best, two decisions, or, as plaintiffs would have it, two "policy" choices. That the effects of those decisions, namely the layoffs, the "refusal" to recall and the hiring of younger workers in the South, reverberated over a period of a few years, does not and, as a matter of law, cannot convert those choices into a longstanding over-arching policy of discrimination which is intended to be ameliorated by the second category of continuous violations. As noted in the Sixth Circuit's most recent address of the second category of the continuing violation doctrine:

> Although it appeared to be a policy of the Postal Service's Xenia, Ohio management to get rid of appellant, we are uncertain that this type of policy qualifies as a "longstanding" one, so as to invoke the second category of "continuous violations". It may be that the Postal Service had a longstanding policy of denying employment to the disabled. However, *appellant must demonstrate something more than the existence of discriminatory treatment in his case. See Dixon*, 928 F.2d at 217 (discriminatory policy appeared plainly in the Ohio Revised Code and administrators openly adhered to this policy); *Conlin v. Blanchard*, 890 F.2d 811, 815 (6th Cir. 1989) (policy of discrimination embodied in Michigan affirmative action plan).

---

**8.** *E.E.O.C. v. Penton Industrial Pub. Co., Inc.*, 851 F.2d 835, 838 (6th Cir.1988).

*Haithcock v. Frank,* 958 F.2d 671, 679 (6th Cir.1992) (emphasis added) This case is simply not one falling within the second category of continuing violations. *See Smith v. Kaldor,* 869 F.2d at 1007–08. Plaintiffs' ADEA claims are time barred.

## V. CONCLUSION

All sixty-two plaintiffs have filed untimely charges of discrimination with the EEOC. They are not entitled to the application of the equitable principles which may excuse their tardiness. Similarly, the instant case does not exhibit the characteristics of one involving a continuing violation. As such, the plaintiffs' federal question claims should be dismissed as untimely.

Accordingly, the defendant's motion for summary judgment as to each plaintiff on all counts (Docket # 57), to the extent it addresses the timeliness of plaintiffs' federal question claims, is GRANTED. Plaintiffs' ADEA claims are therefore DISMISSED. The claims remaining before this court are DISMISSED pursuant to the codification of *United Mine Workers v. Gibbs,* 28 U.S.C. § 1367(c)(3). This case is terminated in its entirety.

IT IS SO ORDERED.

### APPENDIX A

| Plaintiff | Initial Notice | Warning Notice | Lay-off | EEOC Charge | Lay-off to Charge | Announce to Charge |
|---|---|---|---|---|---|---|
| Allen | 10/2/90 | N/A | 9/13/91 | 10/7/91 | 24 | 361 |
| Barker | 10/2/89 | N/P | 1/19/90 | 6/25/91 | 521 | 637 |
| Bialota | 10/2/89 | N/P | 3/23/90 | 7/2/91 | 465 | 637 |
| Bronson | 10/2/89 | N/P | 2/23/90 | 7/2/91 | 493 | 637 |
| Brown | 10/2/89 | N/P | 1/19/90 | 7/2/91 | 528 | 637 |
| Browning | 10/2/89 | N/P | 4/20/90 | 7/2/91 | 438 | 637 |
| Collett (H) | 10/2/90 | N/A | 9/13/91 | 9/17/91 | 4 | 349 |
| Combs (H) | 10/2/90 | N/A | 12/20/91 | 12/20/91 | 0 | 445 |
| Couts | 10/2/89 | 10/24/89 | 5/18/90 | 7/1/91 | 408 | 636 |
| Datkuliak | 10/2/89 | N/P | 6/22/90 | 6/25/91 | 367 | 660 |
| Dembraski | 10/2/89 | 10/24/89 | 1/19/90 | 7/2/91 | 528 | 637 |
| Doxsee | 10/2/89 | N/P | 1/19/90 | 7/2/91 | 528 | 637 |
| Elliott | 10/2/89 | 10/24/89 | 1/19/90 | 7/2/91 | 528 | 637 |
| Federle (H) | 10/2/90 | N/A | 8/16/91 | 9/3/91 | 18 | 335 |
| Halter | 10/2/89 | N/P | 1/19/90 | 7/2/91 | 528 | 637 |
| Harper | 10/2/89 | N/P | 6/22/90 | 6/23/91 | 365 | 628 |
| Haynes | 10/2/89 | 10/24/89 | 1/19/90 | 7/2/91 | 528 | 637 |
| Henkel | 10/2/89 | 10/24/89 | 1/19/90 | 7/2/91 | 528 | 637 |
| Kaplanis | 10/2/89 | N/P | 1/19/90 | 7/22/91 | 548 | 657 |
| Kuemerle | 10/2/89 | N/P | 1/19/90 | 7/2/91 | 528 | 637 |
| Lowman | 10/2/89 | 10/24/89 | 5/18/90 | 7/2/91 | 409 | 637 |
| Lucas | 10/2/89 | N/P | 5/18/90 | 7/2/91 | 409 | 637 |
| McDaniel | 10/2/89 | 10/24/89 | 5/18/90 | 6/27/91 | 404 | 632 |
| Miller, A. | 10/2/89 | N/P | 2/23/90 | 7/2/91 | 493 | 637 |
| Miller, D. | 10/2/89 | N/P | 2/23/90 | 7/2/91 | 493 | 637 |
| Mincks | 10/2/89 | 10/24/89 | 1/19/90 | 7/2/91 | 528 | 637 |
| Mosberger | 10/2/89 | 10/24/89 | 6/22/90 | 7/2/91 | 374 | 637 |
| Nader | 10/2/89 | N/P | 5/18/90 | 7/2/91 | 409 | 637 |
| Penland | 10/2/89 | N/P | 2/23/90 | 7/2/91 | 493 | 637 |
| Ritchie | 10/2/89 | N/P | 7/10/90 | 6/26/91 | 350 | 631 |
| Rusu | 10/2/89 | N/P | 10/5/90 | 6/25/91 | 262 | 630 |
| Small | 10/2/89 | N/P | 5/18/90 | 6/25/91 | 402 | 630 |
| Smith | 10/2/89 | N/P | 6/30/90 | 6/25/91 | 359 | 630 |

| Plaintiff | Initial Notice | Warning Notice | Lay-off | EEOC Charge | Lay-off to Charge | Announce to Charge |
|---|---|---|---|---|---|---|
| Spurgeon | 10/2/89 | 10/24/89 | 5/18/90 | 7/2/91 | 409 | 637 |
| Schwartz | 10/2/89 | N/P | 5/18/90 | 6/26/91 | 403 | 631 |
| Ulrich | 10/2/89 | N/P | 1/19/90 | 7/10/91 | 535 | 638 |
| Whitehurst | 10/2/89 | N/P | 1/19/90 | 7/3/91 | 529 | 638 |
| Whiteleather | 10/2/89 | 10/24/89 | 6/22/90 | 6/25/91 | 367 | 630 |
| Winn–Pride | 10/2/89 | 10/24/89 | 1/19/90 | 7/2/91 | 528 | 637 |
| Asher (H) | 10/2/90 | N/A | 10/18/90 | 11/18/91 | 31 | 412 |
| Barnes | 10/2/89 | N/P | 3/23/90 | 7/15/91 | 478 | 650 |
| Bower | 10/2/89 | N/P | 5/18/90 | 7/2/91 | 409 | 637 |
| D'Orazio | 10/2/89 | N/P | 1/19/90 | 12/16/91 | 693 | 801 |
| Fryberger | 10/2/89 | N/P | 5/18/90 | 9/7/91 | 475 | 704 |
| Garn | 10/2/89 | 10/24/89 | 6/22/90 | 7/2/91 | 374 | 637 |
| Gorrel | 10/2/89 | N/P | 6/22/90 | 7/2/91 | 374 | 637 |
| Jones (H) | 10/2/90 | N/A | 12/20/91 | 1/2/92 | 13 | 457 |
| Mayle | 10/2/89 | N/P | 1/19/90 | 7/2/91 | 528 | 637 |
| Miner | 10/2/89 | N/P | 2/23/90 | 7/2/91 | 493 | 637 |
| Mohler | 10/2/89 | N/P | 1/19/90 | 7/2/91 | 528 | 637 |
| Neal | 10/2/89 | N/P | 1/19/90 | 7/2/91 | 528 | 637 |
| Palaski | 10/2/89 | N/P | 5/18/90 | 7/2/91 | 408 | 637 |
| Rockstroh | 10/2/89 | 10/24/89 | 1/19/90 | 7/24/91 | 550 | 659 |
| Sinopoli | 10/2/89 | 10/24/89 | 1/19/90 | 8/5/91 | 562 | 671 |
| Smith (H) | 10/2/90 | N/A | 9/16/91 | 10/11/91 | 25 | 374 |
| Spivey | 10/2/89 | 10/24/89 | 5/19/90 | 7/2/91 | 408 | 637 |
| Stigall (H) | 10/2/90 | N/A | 9/13/91 | 10/28/91 | 45 | 391 |
| Tarzan | 10/2/89 | 10/24/89 | 3/23/90 | 12/19/91 | 635 | 804 |
| Turner (H) | 10/2/90 | N/A | 12/20/91 | 12/23/91 | 3 | 447 |
| Waikem | 10/2/89 | 10/24/89 | 6/22/90 | 7/10/91 | 383 | 645 |
| Burner | 10/2/89 | 10/24/89 | 2/23/90 | 7/2/91 | 493 | 645 |
| Chappell (H) | 10/2/90 | N/A | 8/16/91 | 12/16/91 | 122 | 440 |