953 F.2d 1384
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
L. Alan PARRISH, Plaintiff-Appellant,
v.
FORD MOTOR COMPANY, Defendant-Appellee.
 No. 91-5300.
 United States Court of Appeals, Sixth Circuit.
 Feb. 7, 1992.
 
 1
 Before NATHANIEL R. JONES and DAVID A. NELSON, Circuit Judges, and JOINER, Senior District Judge.*
 
 
 2
 This age discrimination action currently makes its second appearance before this court. For the reasons that follow, we remand for further discovery.
 
 
 3
 * Plaintiff-appellant L. Alan Parrish began his employment with Ford Motor Company in 1965 and was transferred to Ford's Kentucky Truck Plant in 1969. By 1984, Parrish had achieved the position of production manager and received consistently high marks in company evaluations.
 
 
 4
 In late 1985, Parrish requested a meeting with plant manager Jim Whyte to discuss his promotional opportunities at Ford. Also at the meeting were assistant plant manager Matthew Patterson and industrial relations manager Jim Henry. An audiotape recording of that meeting, made surreptitiously by Parrish, indicates that Whyte told Parrish it was practiced policy at Ford to consider age in making promotional decisions and that, because Parrish was forty-six, the window of opportunity for grooming and further promotions for Parrish was now closed.[1] Although Ford admits that these statements were made, it denies that the statements reflect Ford policy.
 
 
 5
 In November of 1986, Parrish again met with Whyte and other top plant management officials to discuss his opportunities for advancement. In that conversation, also secretly taped by Parrish, Whyte explained that "[i]n the structure of the company, they are looking for people that can go through the organization and have some years left in them when they get to my position [plant manager]," and that an employee has to "move basically by the time you are 40 years old." J.A. at 374. Whyte added that Parrish was too old for further promotion.
 
 
 6
 At a third meeting with the same management officials in February of 1987, Whyte told Parrish that, despite his enviable performance record, "[a]s you get older age works against you in some respects. It's a fact of life." Parrish responded, "[In h]indsight I should have moved sooner. I am 48 and I'm too damn old." Whyte replied, "In fairness, yes you are." Id. at 375-76. Parrish nevertheless requested a lateral transfer to a different Ford plant in the hope that it might improve his chances for promotion. This request was never granted.
 
 
 7
 In June of 1987, Parrish was admitted to Duke University Medical Hospital for chest pain and urticaria, a skin condition. Two treating physicians attributed his ailments to his having been told he was too old to be promoted. A psychiatrist who examined Parrish at Ford's request concurred in that opinion.
 
 
 8
 Parrish began an extended medical leave on August 31, 1987. In November, while Parrish was still on leave, assistant plant manager George Kormanis rated Parrish's job performance a "satisfactory minus," the second lowest rating, despite Parrish's "excellent high" ratings from 1982 through 1985.[2]
 
 
 9
 In January of 1988, Ford management offered Parrish an opening in the plant sales department. The position carried a lower grade level (10 rather than 12) and fewer fringe benefits but would have allowed Parrish to retain his salary level. Parrish refused.
 
 
 10
 On February 15, 1988, a week before his medical leave was scheduled to end, Parrish met with Henry and supervisor Mike Chipman to discuss his future prospects with the company. They informed Parrish that, if he did not return to work, he would be placed on inactive status and lose certain fringe benefits.
 
 
 11
 Six days later, on February 23, 1988, Parrish filed an administrative age discrimination claim with the Kentucky Commission on Human Rights and the United States Equal Employment Opportunity Commission ("EEOC"). On June 3, 1988, Parrish filed a complaint in the United States Court for the Western District of Kentucky, alleging that Ford had denied him promotion opportunities continuously from 1984 to February 23, 1988, solely on the basis of age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.A. §§ 621-634 (West 1985 & Supp.1991). The district court referred the matter to a magistrate for resolution of pretrial matters and for a recommendation.
 
 
 12
 In October of 1988, Parrish served interrogatories and document production requests on Ford. After a dispute arose concerning Ford's responsiveness to discovery, Ford filed a motion for partial summary judgment on December 2, 1988, followed by a motion to stay all further discovery filed on January 30, 1989. On March 2, 1989, the magistrate granted Ford's motion to stay discovery.
 
 
 13
 On March 7, 1989, the magistrate issued an opinion recommending that the court enter summary judgment in favor of Ford on all claims. The district court accepted the magistrate's recommendation on June 8, 1989, stating that the recommendation was not "clearly erroneous or contrary to law." J.A. at 146-47.
 
 
 14
 On appeal, a panel of this court vacated the grant of summary judgment on Parrish's ADEA claim on the ground that the district court improperly applied the clearly erroneous standard in adopting the magistrate's legal conclusions and remanded for explicit de novo review. Parrish v. Ford Motor Co., No. 89-6290, slip op. at 8 (6th Cir., Aug. 2, 1990). The panel refused to conduct the necessary review itself given its "uncertainty as to whether the plaintiff does not have a legitimate basis for demanding a fuller response to his discovery requests." Id.
 
 
 15
 On remand, Parrish filed a motion pursuant to Federal Rule of Civil Procedure 56(f) requesting that the court lift its prior order to stay discovery as well as a memorandum detailing the need for further discovery. The court denied the motion and, on February 6, 1991, reentered summary judgment for Ford on the basis of an explicit de novo review of Parrish's claims, and in addition found that no further discovery was necessary. This timely appeal followed.
 
 II
 
 16
 Section 7(d) of the ADEA requires that a charge alleging unlawful discrimination be filed with the EEOC within 300 days of the alleged unlawful practice. 29 U.S.C. § 626(d) (1988). One of the primary purposes of this limitations provision is to "protect employers from the burden of defending claims arising from employment decisions that are long past." Delaware State College v. Ricks, 449 U.S. 250, 256-57 (1980) (interpreting analogous provision of Title VII).[3]
 
 
 17
 Parrish filed the instant charge on February 26, 1988. Accordingly, for Parrish's claim to be timely, Ford must have taken discriminatory adverse employment action against Parrish between May 2, 1987 and February 26, 1988, the 300-day period immediately preceding the filing. Parrish contends that his filing was timely under the doctrine of continuing violations and, alternatively, under well-established equitable tolling principles. Because the district court granted summary judgment in favor of Ford on this issue, our review is plenary. See Dixon v. Anderson, 928 F.2d 212, 216 (6th Cir.1991).
 
 
 18
 As a general rule, the limitations period in an employment discrimination case begins to run on the date upon which the employee first learns or should have learned of the adverse employment action. See Conlin v. Blanchard, 890 F.2d 811, 815 (6th Cir.1989) (requiring that court determine event that should have alerted average lay person to protect his rights). " 'A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence.' " Dixon, 928 F.2d at 215 (quoting Sevier v. Turner, 742 F.2d 262, 272 (6th Cir.1984)).
 
 
 19
 The Supreme Court has held, however, that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982) (footnote omitted). This circuit has recognized that the limitations period may be tolled where there exists a "continuing violation." The continuing violations exception is itself comprised of two nominally distinct yet often overlapping categories. The first category arises where there exists evidence of present discriminatory activity giving rise to the plaintiff's charge. See EEOC v. Penton Indus. Pub. Co., 851 F.2d 835, 838 (6th Cir.1988) (construing the exception in Title VII context). As explained in Dixon,
 
 
 20
 this category requires a "current" as well as "continuing" violation: at least one of the forbidden discriminatory acts must have occurred within the relevant limitations period. Thus limitations periods begin to run in response to discriminatory acts themselves, not in response to the continuing effects of past discriminatory acts.
 
 
 21
 Dixon, 928 F.2d at 216 (citation omitted); see also Havens Realty Corp. v. Coleman, 455 U.S. 363, 380-81 (1982) (holding that continuing violation exists under Fair Housing Act where party alleges unlawful practice and the last asserted occurrence of that practice fell within limitations period). Examples of such serial violations include the continued imposition of disparate work conditions, assignments, or pay rates between similarly situated employee groups. Penton, 851 F.2d at 838. Each specific instance of disparate treatment "is in itself the forbidden discriminatory act. It is irrelevant that the employer has committed the same illegal act at other times prior to the beginning of the relevant limitations period." Dixon, 928 F.2d at 216; see also Held v. Gulf Oil Co., 684 F.2d 427 (6th Cir.1982) (permitting action where last in a pattern of discriminatory acts occurred within limitations period).
 
 
 22
 The first category of the continuing violation doctrine does not apply, however, where the enforcement of an otherwise benign policy or practice has a discriminatory impact due to an untimely violation. In Lorance v. AT & T Technologies, 490 U.S. 900 (1989), the Court held untimely petitioners' charge, filed in April 1983, alleging an unlawful loss of seniority in 1982 under a neutral seniority system having a discriminatory impact where the system was adopted in 1979. Id. at 911. The Court reasoned that, even if a discriminatory motive prompted the system's adoption in 1979, the implementation of the program in 1982 did not reset the limitations clock: "Because the claimed invalidity of the facially nondiscriminatory and neutrally applied tester seniority system is wholly dependent on the alleged illegality of signing the underlying agreement, it is the date of that signing which governs the limitations period." Id.
 
 
 23
 The second category of the continuing violation exception comes into play only "where there has been a longstanding and demonstrable policy of discrimination." Penton, 851 F.2d at 838; see also Dixon, 928 F.2d at 217. While this category, like the first, requires the allegation of a discriminatory act within the relevant limitations period, it comprehends a potentially broader range of predicate discriminatory acts. Thus, although the simple request for relief from an earlier act of discrimination is normally insufficient to invoke the doctrine, "repeated attempts to gain employment or promotions may each trigger the running of a new limitations period." Dixon, at 217. Moreover, the triggering event need not take the form of a formal application for employment or promotion: the applicant may be qualified and interested for the position but "automatically ... rejected because of his/her race, sex or national origin." Roberts v. North Am. Rockwell Corp., 650 F.2d 823, 827 (6th Cir.1981). In Roberts, we held that the continuing violations doctrine applied where the plaintiff was repeatedly denied employment at defendant's company on the basis of sex even though the last such denial, falling within the statutory period, was not a formal but merely a verbal one:
 
 
 24
 In many ... situations, the refusal to hire or promote results from an ongoing discriminatory policy which seeks to keep blacks or women in low-level positions or out of the company altogether....
 
 
 25
 ... We do not think that Title VII requires that suit be filed when the applicant is initially discriminated against.
 
 Roberts, 650 F.2d at 826-27
 
 26
 In the instant case, Parrish has alleged the existence of an age-discriminatory promotional policy at Ford and therefore may rely on either category of the continuing violations exception. The sole issue at this juncture is whether Parrish has demonstrated a cognizable discriminatory employment decision occurring within the 300 days preceding his filing of the EEOC charge.
 
 
 27
 To establish a prima facie case of age discrimination, a plaintiff must demonstrate (1) that he was a member of the protected class, i.e., that he was between the ages of forty to sixty-five, (2) that he was subjected to an adverse employment action, (3) that he was qualified for the particular position, and (4) that he was replaced by person not a member of the protected class. Gagne v. Northwestern Nat'l Ins. Co., 881 F.2d 309, 313 (6th Cir.1989). Thus, Parrish must allege not only that he was denied a promotional or lateral transfer opportunity for which he was qualified within the limitations period, but also that the position was filled by a person younger than he. See Barnes v. GenCorp, 896 F.2d 1457, 1466 (6th Cir.) ("An employer violates ADEA when preference is given to a younger employee even if the younger employee is within the protected class of persons...."), cert. denied, 111 S.Ct. 211 (1990). If Parrish successfully proves a prima facie case, Ford may then come forward with a legitimate, nondiscriminatory reason for Parrish's rejection. Gagee, 881 F.2d at 313. Should Ford do so, the burden rests with Parrish to prove by a preponderance of the evidence that Ford's proffered nondiscriminatory reason is merely a pretext. Id.
 
 
 28
 As an initial matter, we reject Parrish's contention that the February 15, 1988 meeting with Henry and Chipman constituted a discriminatory act sufficient to fall within either category of the continuing violations exception. At that meeting, Chipman told Parrish that if he did not return from medical leave by February 23, he would be placed on inactive status and lose certain fringe benefits. Although Parrish would have us view his illness, and consequently the threatened demotion, as a direct consequence of Ford's age-discriminatory policy, we believe that Ford's actions at this meeting constituted at most the imposition of a neutral corporate medical leave policy having a discriminatory effect due to an earlier act of discrimination preceding the 300-day limitations period. As such, Ford's actions at this meeting did not toll the filing period. See Lorance, 490 U.S. at 911.
 
 
 29
 The record discloses, however, that in response to Parrish's interrogatories, Ford conceded that at least eight employees at Parrish's level were promoted or laterally transferred between the beginning of the limitations period and August 31, 1987, when Parrish was placed on sick leave. See J.A. at 59-60. In answer to Parrish's interrogatories, Ford gave only the first initials, last names, and positions of these individuals, but failed to state the ages of any of the eight. Id. In response to Parrish's request that Ford produce documents relating to these and other employees, Ford objected on grounds of overbreadth, burdensomeness, and relevance. See id. at 63-64. The magistrate subsequently issued an order on March 22, 1989 staying all further discovery, which was sustained by the district court. On Parrish's previous appeal, the panel expressed uncertainty as to whether Parrish had been permitted adequate discovery, and accordingly remanded in part to allow the district court to reconsider Parrish's request for further discovery. On remand, the district court rather summarily affirmed his earlier determination that any further discovery was unnecessary. J.A. at 254.
 
 
 30
 As the preceding discussion suggests, access to the personnel files of the eight individuals promoted during the limitations period, in order to discover at a minimum their ages and qualifications, is clearly necessary for Parrish to establish a prima facie case of discrimination within the limitations period. Regardless of whether Parrish formally applied for these positions, given Ford's awareness of Parrish's desire for promotion, coupled with Parrish's allegation of a long-standing policy of age discrimination at Ford, the requested evidence may well support a prima facie case so long as Parrish was qualified for the position at issue and was rejected in favor of a younger person. After careful review of the record, we are unable to say if Parrish was ever given access to these files before the magistrate granted Ford's motion to stay all further discovery: At oral argument, counsel for Parrish insisted that Ford never made the personnel files of these individuals available, while Ford's counsel was equally adamant in its insistence that the files were made available but that Parrish never sought to inspect them.
 
 
 31
 We believe that, if the district court stayed discovery before Parrish was granted access to the personnel files, its action constituted reversible error. Although we review a district court's decision on a party's motion for further discovery under the abuse of discretion standard, Glen Eden Hosp., Inc. v. Blue Cross & Blue Shield, 740 F.2d 423, 428 (6th Cir.1984), this discretion is not without limits. See, e.g., Monks v. Marlinga, 923 F.2d 423, 426 (6th Cir.1991) (Nelson, J., concurring) (stating that where party files Rule 56(f) motion requesting further discovery, failure to permit continuance of discovery may constitute reversible error); Glen Eden Hosp., 740 F.2d at 428 (holding that district court abused discretion in staying further discovery and granting summary judgment to party that had "not been extremely forthcoming" in responding to opposing party's requests); Yashon v. Gregory, 737 F.2d 547, 556 (6th Cir.1984) (holding that district court abused discretion in granting summary judgment where record was inadequate to resolve issues in dispute). Careful review of discovery requests is particularly appropriate in civil discrimination cases where an employer articulates a legitimate, nondiscriminatory reason for its employment decision, because the plaintiff "must take the extra step of presenting evidence to show that the reasons given [by the employer] are an attempt to cover up the employer's alleged real discriminatory motive." Irvin v. Airco Carbide, 837 F.2d 724, 726 (6th Cir.1987).
 
 
 32
 To assist the district court on remand in determining the accuracy of each party's position on this factual dispute, we have included with this opinion an audiotape reproduction of the parties' oral argument before this Court. Although we cannot say with certainty whether Parrish was permitted adequate discovery, given Ford's unresponsiveness to Parrish's written document requests, we are inclined to believe that further discovery is in order. Accordingly, we strongly suggest that the district court permit discovery of the personnel files of all grade 12 or 13 Ford employees who were promoted or transferred within the entire 300-day limitations period. In addition, we note that Ford improperly limited the period of discoverable material to August 31, 1987, when Parrish accepted a medical leave of absence: While Parrish's medical leave may well constitute a legitimate, nondiscriminatory reason for Ford's decision, Parrish must nevertheless be given the opportunity to prove that this reason was mere pretext. As stated in Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 255 n. 10 (1981), "[a] satisfactory explanation by the defendant destroys the legally mandatory inference of discrimination arising from the plaintiff's initial evidence. Nonetheless, this evidence and inferences properly drawn therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual."
 
 
 33
 Finally, we note that, if Parrish on remand bears his burden of alleging a discriminatory act within the limitations period and presents sufficient supporting evidence to overcome Ford's motion for summary judgment, he will then be entitled to a broader scope of discovery to support his theory that there existed a company-wide policy of age discrimination at Ford. See EEOC v. K-Mart Corp., 694 F.2d 1055, 1066 (6th Cir.1982); EEOC v. Cambridge Tile Mfg., 590 F.2d 205, 206 (6th Cir.1979) (holding that relevancy for discovery purposes in discrimination actions is "very broad").
 
 
 34
 As to Parrish's equitable tolling argument, we find it to be without merit. Cf. Janikowski v. Bendix Corp., 823 F.2d 945, 947 (6th Cir.1987) (rejecting equitable tolling in age discrimination case). Although Parrish seeks support for this position in Leake v. University of Cincinnati, 605 F.2d 255 (6th Cir.1979), that case is clearly distinguishable. In Leake, this court found the filing limitations tolled in a civil rights action brought against an employer after the employee clearly put the employer on notice of her complaint within the limitations period, the parties thereafter entered into voluntary negotiations, and the employer explicitly agreed that it would not use the time it spent in its investigation of the claim to prejudice the employee with respect to the statute of limitations. Id. at 259. In the instant case, by contrast, Parrish never put Ford on notice prior to filing that he might file the instant charge, nor is there any basis for believing that Ford and Parrish were involved in any type of negotiations regarding a possible discrimination suit that Parrish might later bring.
 
 III
 
 35
 For the foregoing reasons, we REVERSE the entry of summary judgment in favor of Ford and REMAND for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable Charles W. Joiner, Senior District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Ford's grooming process for upper-level management, including Parrish's grade 12, involved movement between plants and positions, including lateral transfers
 
 
 [2]
 The performance ratings were on a scale of unsatisfactory, satisfactory minus, satisfactory, excellent, excellent high, and outstanding
 
 
 [3]
 Although Ricks involved a claim under Title VII rather than the ADEA, we find its analysis relevant to the present inquiry. See Public Employees Retirement Sys. v. Betts, 492 U.S. 158, 181-82 (1989) (applying analogous Title VII provisions to § 4(f)(2) of ADEA based on their "similar structure and purpose")