**James W. POWERS, Plaintiff,**

v.

**PINKERTON INCORPORATED,
et al., Defendants.**

**No. 1:94 CV 213.**

United States District Court,
N.D. Ohio,
Eastern Division.

Aug. 11, 1997.

William I. Fadel, Kathleen M. Sasala, William T. Wuliger, Cleveland, OH, for Plaintiff.

Ricardo Teamor, Cleveland, OH, for Defendants.

*Memorandum of Opinion and Order*

GAUGHAN, District Judge.

This employment discrimination matter was commenced by plaintiff, James W. Powers, on February 3, 1994, against defendants, Pinkerton Incorporated and Bartley Kubisen (hereafter, defendants), with the filing of a Complaint. Plaintiff then filed an Amended Complaint and Substituted Amended Complaint. With leave of Court, plaintiff filed a Second Amended Complaint.[1] This matter is before the Court upon defendants' Motion for Summary Judgment (Doc. 138). For the following reasons, the Motion is GRANTED.

*Introduction*

Generally, this is an employment discrimination case arising out of defendants' actions allegedly taken in response to plaintiff's report of the sexual harassment of a co-employee. Plaintiff's Second Amended Complaint sets forth eleven causes of action which allege violations of Title 42 U.S.C. § 2000e–2 (which makes it an unlawful employment practice to discriminate on the basis of race, color, religion, sex or national origin); 42 U.S.C. § 2000e–3 (which makes it an unlawful employment practice to discriminate against an employee for opposing an unlawful employment practice under Title VII (42 U.S.C. § 2000e et seq.)); 42 U.S.C § 1981a (which is a provision regarding damages in cases of intentional discrimination); 29 U.S.C. § 621 et seq. (the Age Discrimination in Employment Act (ADEA) which prohibits discrimination on the basis of age) and various doctrines of state law.

*Facts*

Pinkerton is a company which provides security and investigation services. (pltf.Ex. 12). Plaintiff began his employment with Pinkerton in 1991 in the Banking Division. (pltf.aff.¶ 4). The Banking Division services automatic teller machines (ATM). (Richard Robinson depo. at 23). Defendant Kubisen also began his employment with Pinkerton in 1991 and was employed as Branch Manager in April, 1993. (Kubisen aff. ¶ 1). Prior to April, 1993, plaintiff was promoted to Banking Captain. (pltf.aff.¶ 4). On March 29, 1993, Kubisen placed plaintiff on an extended assignment to complete performance evaluations of the Banking Division employees. (*Id.*, pltf. Exs. 3 and 4).

On April 15, 1993, Jennifer Perelka, an employee of Pinkerton, was sexually harassed by another employee, Sergeant Gary Auerbach, while they were assigned together to perform ATM duties. (pltf. Ex. 9—handwritten account of Jennifer Perelka. The account reports the date as April 15, 1994, but there is no dispute that the correct date was 1993.). The harassment continued on April 16. (pltf.Ex. 8). Ms. Perelka telephoned plaintiff at his home on April 15 to relate the incident. (Although the deposition testimony plaintiff identifies does not show that the telephone conversation occurred on April 15 at plaintiff's home (pltf.depo.151–152), plaintiff's Motion and reply brief indicate that plaintiff was contacted by Perelka on April 15.)

Plaintiff's answers to interrogatories set forth the following course of events: On the morning of April 16, 1993, plaintiff received a page from Ms. Perelka while plaintiff was on his rounds in the company of another employee, Robert Eedy. He returned the page from a pay telephone. Ms. Perelka pretended that plaintiff was her mother. Plaintiff questioned her about whether she was having trouble with whom she was working. She responded that she was having difficulty and that it was serious. Plaintiff told Ms. Perelka that he was on the road and he could not jeopardize Mr. Eedy, but that he would telephone the office and attempt to get someone to help her with her problem. Plaintiff then telephoned the Pinkerton offices and left messages with Mr. Kubisen and Fred Prassack for them to return his call. Thirty minutes later, Ms. Perelka paged plaintiff again. Plaintiff returned her page at his next site at which time Ms. Perelka reiterated her concerns. Plaintiff then telephoned the Pinkerton offices again and spoke with Kristin Miller (a Pinkerton employee). Plaintiff told Ms. Miller that Ms. Perelka had a potential sexual harassment claim against another employee and that it was very important that Kubisen and Prassack return his

1. Plaintiff's motion for leave to file a third amended complaint has been denied.

call. Within the next hour, plaintiff ran into Ms. Perelka and Gary Auerbach at a bank in Cleveland. Ms. Perelka told plaintiff that she needed to get away from Auerbach because she did not know what was going to happen and whether he might hurt her. Plaintiff indicated to her that Kubisen and Prassack had not returned his calls and he could not leave his post, but she should "hang in there" as her shift was almost finished. In the early afternoon, plaintiff received a page from Prassack. Upon speaking to him. Prassack told plaintiff that he should have Ms. Perelka and Auerbach return to Prassack's office immediately. Plaintiff informed Prassack that he had heard on the radio traffic that Perelka and Auerbach were already returning to the office. Perelka and Auerbach returned to the offices before plaintiff and, upon his return, plaintiff learned that Auerbach had been terminated.

Plaintiff then completed a written statement of the incident and gave it to Pinkerton before he left on April 16. (pltf. answers to interrogatories, Nos. 4 and 5). Plaintiff did not retain a copy of this report and he testified at deposition that he left the report on Kubisen's desk. (pltf.depo.146). No copy of the report has been found by defendant. Kubisen testified that he could not recall a report of the incident prepared by plaintiff. (Kubisen depo. at 352). Defendants state that the only written record of the events is a May 19, 1993 letter written by plaintiff to Regional Vice President, Richard Robinson. (deft.Ex. 8). However, this letter is predominantly a complaint related to plaintiff's demotion.

It is undisputed that Auerbach was terminated by Kubisen on April 16, 1993. (April 16, 1993 memo signed by Prassack and Kubisen). On that day, Ms. Perelka informed Prassack, the District Manager, and Kubisen that she had been sexually harassed by Auerbach. (*Id.*). Prassack and Kubisen confronted Auerback who admitted certain comments. (*Id.*). Auerbach was terminated for violation of Pinkerton's sexual harassment policy as stated in its manual. (*Id.*).

Kubisen avers that he became aware on April 19, 1993, that plaintiff failed to report Perelka's harassment complaint to the "chain of command" at Pinkerton in a timely manner. (Kubisen aff. ¶ 2). On that date, Kubisen became aware that plaintiff first learned of the complaint on April 15, 1993. Kubisen learned this from John Buettner who informed Kubisen that he was present when Perelka called plaintiff to inform him of the harassment. (*Id.* ¶ 3). (See also the written statement prepared by Buettner dated April 19, 1993 wherein he states that he was present when Perelka talked with plaintiff on the phone on April 15. (deft.Ex. 2)). Also on April 19, Kubisen became aware that plaintiff had advised Perelka to conceal a tape recorder on her person and to go out into the field with Auerbach. (*Id.* ¶ 4). Plaintiff testified that as he and Perelka were unsure as to whether she had a "valid claim" of sexual harassment, plaintiff advised Perelka during their phone conversation on April 15 to tape her conversation with Auerbach. (pltf. depo. at 150). Perelka was unarmed and Auerbach was armed. (*Id.* ¶ 5). Kubisen further averred that on April 16, 1993, plaintiff falsely represented to Kubisen that he was not aware of the complaint until April 16. (*Id.* ¶ 6). On April 19, 1993, plaintiff was demoted by Kubisen to the position of Responder with a pay reduction in the amount of $.50 per hour. Kubisen averred that plaintiff was demoted for failing to follow company procedure in reporting the harassment, placing a subordinate employee at risk of serious harm and giving false information to his superiors regarding the day he learned of the harassment. (*Id.* ¶ 7). Perelka retained the tape recording. (*Id.* ¶ 8).

Kubisen prepared a memorandum dated April 19, 1993 regarding the demotion. Therein, it was stated that plaintiff became aware of Perelka's complaint of Auerbach on the evening of April 15 and that plaintiff failed to bring this to the immediate attention of the chain of command, Lt. Scott Vargo and Kubisen. On April 16, plaintiff "superceded" [sic] the chain of command by contacting Kubisen's supervisor. It was stated that if plaintiff had contacted Kubisen in a timely manner, the matter could have been resolved with minimal effect to the operations of the office. It was further stated that plaintiff gave false information to Kubisen

regarding the date he learned of the incident. Finally, it was stated that plaintiff's failure to bring the matter to the immediate attention of his supervisor had three results: (1) the discharge of a competent armed employee—the employees involved could have been "separated and counseled", but rather the situation escalated because plaintiff had advised Perelka to conceal the tape recorder, (2) the insubordination of plaintiff in lying to Kubisen concerning the former's knowledge and (3) causing "excessive overtime and undue operational hardship" to the office. (pltf.Ex. 13).

The Pinkerton "Policy against Harassment" provides in part:

All supervisors and/or management will immediately report any incidents of sexual harassment to the District Manager or Regional Vice President.

(pltf.Ex. 14).

On February 3, 1994, plaintiff filed his original Complaint alleging retaliation in violation of Title VII for being demoted after reporting an incident of sexual harassment; state law claims which assert that various supervisors to whom plaintiff sought advice regarding the demotion breached, *inter alia*, their promises to assist him; that Kubisen defamed him; that plaintiff's privacy was invaded on May 28, 1993 when defendants conducted an unauthorized employment background investigation of plaintiff; and intentional and negligent infliction of emotional distress. Although plaintiff was alleging a violation of Title VII, he did not assert that he filed any administrative charge (e.g., EEOC).

On May 13, 1994, plaintiff filed an Amended Complaint which added two additional counts: Count Ten which alleged that defendants "have intentionally and systematically discharged, disciplined, demoted and/or constructively discharged employees in the Cleveland Banking Division, including plaintiff, who are over age forty (40)" in violation of the ADEA. Count Eleven which alleges a violation of Ohio Revised Code (ORC) § 4113.52, the Ohio Whistleblower statute. Attached to the Amended Complaint is a Notice of Right to Sue issued by the Equal Employment Opportunity Commission (EEOC) dated May 6, 1994. Plaintiff does not attach a copy of the charge he filed with the EEOC. Plaintiff then filed a Substituted Amended Complaint which merely made minor corrections and did not make substantive changes.

On January 27, 1995, Magistrate Judge Heman issued a Report and Recommendation on defendants' Motion to Dismiss the Substituted Amended Complaint. The Report and Recommendation addressed only the federal claims (Title VII and ADEA) inasmuch as the defendants did not move to dismiss the state law claims. Defendants moved to dismiss the federal claims on the basis that they were time-barred because plaintiff had failed to file an EEOC charge within 300 days of the alleged violation. Magistrate Heman recommended that the motion be denied "at this stage" as there was a factual dispute as to whether there had been a continuing violation so as to toll the running of the limitations period. In making this determination, the Magistrate relied on the allegations set forth in Count Eight which alleged intentional infliction of emotional distress. Therein, plaintiff alleged that he suffered demotion, reduction in salary, loss of promotions, discrimination and mandatory additional training as a result of his reporting the misconduct. The Magistrate recommended that the motion be granted as to the ADEA claim because plaintiff had only made conclusory allegations as to this count and no prima facie case was attempted to be plead.

On November 29, 1995, United States District Judge Oliver issued an order wherein he allowed plaintiff to amend his complaint to replead the ADEA claim. Additionally, Judge Oliver adopted the Report and Recommendation to the extent that the motion to dismiss the Title VII claim be denied.

Plaintiff thereafter filed his Second Amended Complaint elaborating on his ADEA claim. Thus, the Second Amended Complaint sets forth eleven counts:

Count One: Plaintiff was discriminated against and demoted on April 19, 1993 for reporting sexual harassment of a co-worker on April 16.

Count Two: On April 27, 1993, plaintiff spoke with Prassack regarding the demotion. The latter promised to look into the matter and get back to plaintiff. He failed to do so and thereby ratified Kubisen's actions, "breached his promise, his covenant of good faith and fair dealing, employment contract all as contrary to public policy..."

Count Three: On May 19, 1993, plaintiff wrote a letter to Richard Robinson, a Pinkerton vice president, and thereafter met with him. Although the latter told plaintiff he would investigate the matter he never again contacted plaintiff and thereby ratified Kubisen's actions, "breached his promise, his covenant of good faith and fair dealing, employment contract all as contrary to public policy..."

Count Four: On September 13, 1993, plaintiff contacted Larry Jorgenson, a Pinkerton vice president, regarding the demotion. The latter took no action but referred the matter to Charles Molina (director of human resources) and thereby ratified Kubisen's actions, "breached his promise, his covenant of good faith and fair dealing, employment contract all as contrary to public policy..."

Count Five: On September 15, 1993, plaintiff called Molina and then sent a letter documenting his demotion, decrease in pay, discipline, harassment and humiliation by Kubisen. Molina failed to respond, and thereby ratified Kubisen's actions, "breached his promise, his covenant of good faith and fair dealing, employment contract all as contrary to public policy ..."

Count Six: Kubisen defamed plaintiff.

Count Seven: On May 28, 1993, Pinkerton conducted an employment background investigation of plaintiff thereby invading his privacy.

Count Eight: As a result of reporting misconduct, plaintiff "has suffered numerous acts of damage" by defendants, including "demotion, reduction in salary, loss of promotions, discrimination, required to undergo additional training, all of which have caused" intentional infliction of emotional distress.

Count Nine: Defendants have intentionally and/or negligently inflicted emotional distress.

Count Ten: (ADEA) Beginning in at least February, 1993, employees over the age of 40, including plaintiff, did not receive, or received less frequently, bonuses, raises, overtime assignments and promotions although those under 40 never received evaluations. Kubisen, who was ultimately responsible for hiring in the Division, never hired anyone over 40. On March 29, 1993, plaintiff was relieved of his regular duties which were assigned to Scott Vargo, who was less senior and under 40. After February, 1993, Kubisen gave a relatively new secretary, in her twenties, and whom plaintiff had trained, plaintiff's office, his responsibilities and supervision over plaintiff. Between September, 1993 and February, 1994, plaintiff called Pinkerton's "Alertline" to report his discrimination based on age and in February and April, 1994, he informed Lt. Vargo and Sgt. Buettner of the discrimination. He filed an EEOC charge on April 20, 1994, claiming, *inter alia,* age discrimination, and one week after April 20 employees over age 40 were promoted.

Count Eleven: Defendants violated ORC § 4113.52 when they took retaliatory actions against plaintiff for reporting the sexual harassment.

Plaintiff does not attach a copy of the EEOC charge.

Now before this Court is defendants' Motion for Summary Judgment.

### *Standard of Review*

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In a summary judgment proceeding, the movant is not required to file affidavits or similar evidentiary materials negating a claim on which the non-movant bears the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Rather, a movant who does not

bear the burden of proof on a claim establishes entitlement to summary judgment by:

> ... identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.

*Celotex Corp.,* 477 U.S. at 323–325, 106 S.Ct. 2548. The non-movant has the burden of designating specific facts showing that there is a genuine issue for trial. This requires that the non-movant go beyond the pleadings and adduce evidence concerning any essential element through the use of any of the kinds of evidentiary material listed in Rule 56(c). *Id.* at 324, 106 S.Ct. 2548.

Moreover, "(t)he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–1480 (6th Cir.1989). (citation omitted). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Moreover, "hearsay evidence may not be considered on a motion for summary judgment." *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir.1996).

### Discussion

Defendants argue that plaintiff's Title VII (alleged violations of 42 U.S.C. §§ 2000e–2 and 2000e–3) and ADEA claims are barred because plaintiff did not file an EEOC charge within 300 days of the discriminatory act.[2] Plaintiff's original Complaint herein was filed on February 3, 1994. His EEOC charge was filed on April 20, 1994. (see Ex. to Loraine Cecil deposition).

 "The timely filing of an EEOC complaint is a 'jurisdictional prerequisite' for both Title VII suit and an ADEA suit." *Orsini v. East Detroit Public Schools,* No. 94–1300, 1995 WL 428426 (6th Cir. July 19, 1995). A plaintiff must file the EEOC charge within 300 days of the alleged discriminatory action. *Id.;* 42 U.S.C. § 2000e–5(e) (Title VII) and 29 U.S.C. § 626(d) (ADEA). The limitations period "begins to run on the date upon which the employee first learns or should have learned of the adverse action." *Parrish v. Ford Motor Company,* No. 91–5300, 1992 WL 20305 (6th Cir.1992) (citations omitted). However, the filing of a timely EEOC charge of discrimination is a "requirement that, like a statute of limitations, is subject to waiver, estoppel and equitable tolling." *Id.,* citing *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Where a "continuing violation" exists, the limitations period may be *tolled. Dixon v. Anderson,* 928 F.2d 212, 213 (6th Cir.1991).

It is not disputed that the filing of the EEOC charge herein occurred more than 300 days after the April 19, 1993 demotion (the alleged discriminatory act supporting the Title VII retaliation claim). Resolution of this matter with respect to the ADEA claim is not as clear because plaintiff's Second Amended Complaint alleges only one specific date on which an unlawful employment practice occurred (i.e., on March 29, 1993, Scott Vargo, under 40, assumed plaintiff's duties). Otherwise, plaintiff alleges that "beginning in at least April, 1993 ..."; "beginning in at least February, 1993 ..."; and "after February, 1993 ..." alleged discrimination occurred. Further, the EEOC charge merely asserts that plaintiff was denied a bonus because of his age but does not give a date.

 Plaintiff contends that his Title VII and ADEA claims are timely under the doc-

---

**2.** The parties argue over whether this Court should address this argument. Plaintiff argues that the Court indicated that she would not revisit this issue if Judge Oliver did not leave the issue open in his November 29, 1995 order and that he did not do so. However, Judge Oliver accepted Magistrate Heman's Recommendation as to the Title VII claim without any discussion. Magistrate Heman had recommended that inasmuch as the court could not resolve the factual dispute "at this time" as to whether there was a continuing violation or whether subsequent alleged actions were merely a consequence of the demotion of April 19, 1993, the motion to dismiss the Title VII claim should not be dismissed "at this stage". Thus, it is appropriate to resolve this issue.

trine of equitable tolling. This Circuit has addressed the doctrine of equitable tolling in cases of untimely EEOC charges in employment cases. *Allen v. Diebold, Inc.,* 807 F.Supp. 1308 (N.D.Ohio 1992), *affd. on other grounds, Allen v. Diebold, Inc.,* 33 F.3d 674 (6th Cir.1994). The application of this doctrine is limited, "usually very much restricted" and to be "carefully applied". *Allen,* 807 F.Supp. at 1313 (citations omitted). Equitable tolling may be invoked where the plaintiff knows he has been injured but he cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so, by the defendant. The doctrine "does not assume" any wrongful conduct by the defendant to prevent plaintiff from suing. *Id., citing Cada v. Baxter Healthcare Corp.,* 920 F.2d 446 (7th Cir.1990). Thus, the facts necessary to support a charge of discrimination must not have been apparent to "a person with a reasonable regard for his rights in the exercise of due diligence." *Id.* Finally, it is facts necessary to support an EEOC charge, not necessarily a federal court suit, which requires precomplaint inquiry. *Id.*

Plaintiff asserts that he has been unable to obtain the following information from defendants related to his Title VII claim: (1) the tape Perelka made of the harassment, (2) plaintiff's written report made on April 16 of the harassment and (3) Pinkerton's investigative file pertaining to plaintiff's claims. Plaintiff asserts that with regard to his ADEA claim he has been unable to obtain demographic information or personnel files.

These assertions are insufficient to support an application of the equitable tolling doctrine as stated in *Allen.* These facts *may* be necessary for plaintiff to prevail on a lawsuit. However, to be excused from filing the EEOC charge plaintiff must show that he did not have information to decide whether his demotion was a result of defendants' wrongdoing. In plaintiff's May 19, 1993 letter to Richard Robinson he complains that he was "unjustly demoted" (deft.Ex. 8). Obviously, he thought at that time there was wrongdoing. With respect to the ADEA claim, plaintiff does not show how failing to have access to the statistics would have prevented him in the exercise of due diligence from knowing,

for example, that the alleged replacement by Scott Vargo on March 29, 1993 may have been a decision based on age.

■ Next, plaintiff argues that the doctrine of equitable estoppel also applies based on these same claims of withholding documents. Equitable estoppel, also known as fraudulent concealment, applies where a defendant "takes active steps . . . to prevent the plaintiff from suing in time." *Allen,* 807 F.Supp. at 1314, *citing Cada.* Again, the evidence alleged to have been withheld does not support an excuse for failing to file the EEOC charge on time.

Plaintiff also asserts that the doctrine of equitable estoppel applies because of the promises made by the agents of Pinkerton that they would look into plaintiff's demotion but never did, and the request by Pinkerton counsel (Denise McGorrin) that plaintiff refrain from filing suit until she had a chance to investigate the matter. However, as noted in *Allen, supra,* equitable estoppel connotes an affirmative act of concealment on the defendant's part. Plaintiff has not shown evidence of this. Even assuming that counsel for Pinkerton requested that plaintiff refrain from filing suit, this does not rise to the level of conduct envisioned by the doctrine. (See, for example, *Allen,* 807 F.Supp. at 1314, *citing Cada,* wherein it was reasoned that a plaintiff's accrual date "would be postponed if the employer told the plaintiff it would not plead a limitations defense or had presented plaintiff with forged documents 'purporting to negate any basis for supposing that [plaintiff's] termination was related to age.' ").

■ Finally, plaintiff asserts that his claims are timely under the "continuing violation" theory. There are two categories of continuous violations which would excuse an untimely filing. *Dixon v. Anderson,* 928 F.2d 212 (6th Cir.1991). The first category requires some evidence of *present* discriminatory activity. This category requires a "current" as well as "continuing" violation. Thus, at least one of the discriminatory acts occurred within the relevant limitations period. *Id.* This category does not encompass continuing "effects" of past discriminatory acts. *Id.* The second category requires "a longstanding and demonstrable policy of dis-

crimination". Unrelated incidents of discrimination are insufficient. *Id.*

Plaintiff appears to argue that he falls within the first category. Plaintiff points to his EEOC charge (which was filed April 20, 1994) which he states indicates a retaliatory event occurring on April 6, 1994. (Plaintiff does not argue that the April 6 date had anything to do with age.) The Second Amended Complaint does not allege a retaliatory act occurring on April 6, 1994. Additionally, defendants point to plaintiff's deposition testimony wherein he states that he cannot remember what happened to him on April 6. In his brief, plaintiff argues that this is not fatal because one of his doctors has said that as a result of the unlawful treatment plaintiff has suffered memory loss.

The EEOC charge contains a box "Date Discrimination took Place": Earliest—plaintiff indicates 4/19/93, Latest—plaintiff indicates 4/6/94. The EEOC charge states in full:

> I have been employed by Respondent since 1991. I believe I have been demoted, had my salary reduced, have been disciplined, have been verbally harassed, have been subjected to an unauthorized credit check, and have been required to undergo additional training in retaliation for having reported sexual harassment allegations against a supervisor, in violation of [Title VII].
>
> I have been denied a bonus whereas younger employees have received bonuses. I believe I have been denied a bonus because of my age, 47, in violation of the ADEA.

Plaintiff's Second Amended Complaint alleges at Count One that he was demoted on April 19 in violation of Title VII. He does not allege further discriminatory acts. In Count Eight, plaintiff alleges intentional infliction of emotional distress based on defendants' numerous acts including "demotion, reduction in salary, loss of promotions, discrimination, required to undergo additional training..."

However, these are not alleged to be further acts of discrimination.[3]

Finally, plaintiff asserts that the following facts occurred within the 300 day filing window:

(1) plaintiff telephoned Larry Jorgenson (Pinkerton VP of Banking) on September 13, 1993 regarding his demotion but Jorgenson never followed up.

(2) plaintiff telephoned Charles Molina on September 15, 1993 and sent him a letter on September 18, 1993 enclosing documentation of his demotion, decrease in pay, discipline, harassment and humiliation but Molina never got back to him although assuring plaintiff he would appropriately pursue it.

(3) at the end of 1993 and on January 11, 1994, plaintiff's counsel had conversations with defendants' in-house counsel wherein she initially asked counsel to refrain from filing suit until she investigated plaintiff's complaints but then advised plaintiff that Pinkerton could do nothing. (supported by letters sent from plaintiff's counsel).

However, none of these incidents constitute a *discriminatory act*. Rather, they may be continuing *effects* of the alleged past discriminatory act (the demotion). Thus, under *Dixon*, they do not constitute continuing violations. Therefore, because the sole retaliatory act in violation of Title VII was the April 19, 1993 demotion, this claim is barred because plaintiff did not file a timely EEOC charge.

■ Finally, plaintiff does not point to any specific evidence of a continuing ADEA violation. Again, the Second Amended Complaint alleged that beginning in at least April, 1993, employees over 40 were intentionally and systematically discharged, disciplined, demoted and/or constructively discharged; beginning in at least February, 1993, employees over 40 were denied bonuses, given less frequent raises and received no overtime; Kubisen never hired anyone over 40; on March 29, 1993, plaintiff's duties were given

---

**3.** While plaintiff argues in his own Motion for Summary Judgment that after he was demoted he was subjected to further retaliation and lists thirteen various items, he states in a footnote that he "has not included a detailed explanation of these facts because they are not germane to the retaliation and whistleblower claims upon which plaintiff seeks summary judgment." Thus, plaintiff seems to argue that the demotion is the sole act of retaliation.

to an employee under 40; and after February, 1993, Kubisen gave a younger secretary plaintiff's office and responsibilities. The EEOC charge was filed April 20, 1994. Thus, acts occurring before June 20, 1993 would be time-barred unless plaintiff could show he is entitled to equitable tolling, equitable estoppel or continuing violation. Plaintiff has not done so. Additionally, the only specific date given for an alleged ADEA violation is March 29, 1993.

The Second Amended Complaint also alleges that between September 18, 1993 and February 7, 1994, plaintiff called Pinkerton's "Alertline" and stated that Pinkerton discriminates based on age. Additionally, on February 7, February 17 and April 7, 1994, he again informed Pinkerton through its agents that the company discriminated. However, he fails to state any specific act of discrimination. Therefore, he fails to adequately allege a continuing violation.

### Conclusion

For the foregoing reasons, plaintiff's claims of violations of Title VII and ADEA are time-barred. Further, plaintiff asserts that defendants did not move for summary judgment on the § 1981a claim and, thus, there is no issue that it is timely. However, a claim based on § 1981a does not afford an independent ground for relief but is a statutory provision for additional recovery of damages in Title VII cases. *Swartzbaugh v. State Farm Ins.*, 924 F.Supp. 932 (E.D.Mo. 1995); *Ferry v. Roosevelt Bank*, 883 F.Supp. 435 (E.D.Mo.1995). Accordingly, defendants' Motion for Summary Judgment is granted as to plaintiff's federal claims.

Plaintiff's pendent state law claims are dismissed without prejudice pursuant to the authority of *Wolotsky v. Huhn*, 960 F.2d 1331 (6th Cir.1992) ("Where a district court exercises jurisdiction over state law claims solely by virtue of pendent jurisdiction and the federal claims are dismissed prior to trial, the state law claims ordinarily should be dismissed without reaching their merits."). Therefore, the following counts of the Second Amended Complaint are dismissed without prejudice: Two, Three, Four, Five (all of which allege that various of defendants' employees breached their promise, covenant of good faith and fair dealing and employment contract), Six (defamation), Seven (invasion of privacy), Eight and Nine (intentional and negligent infliction of emotional distress) and Eleven (Ohio Whistleblower statute).

IT IS SO ORDERED.